IN THE MATTER OF: BUDDY SHERMER

No. COA02-427

(Filed 4 March 2003)

**Termination of Parental Rights— clear, cogent, and convincing evidence standard—neglect—willfully left in foster care— willfull abandonment**

The trial court abused its discretion by terminating respondent father's parental rights regarding his younger son under N.C.G.S. § 7B-1111, because: (1) the finding of neglect or the probability of its repetition at the time of the termination proceeding was not based on clear, cogent, and convincing evidence; (2) the Department of Social Services (DSS) did not prove by clear, cogent, and convincing evidence that respondent willfully left his children in foster care for more than twelve months and that he had not made reasonable progress to correct those conditions that led to the children's removal when respondent was incarcerated and there was little involvement he could have beyond what he did; and (3) DSS did not prove by clear, cogent, and convincing evidence that respondent willfully abandoned his children.

IN RE SHERMER

[156 N.C. App. 281 (2003)]

Appeal by respondent from judgment entered 10 October 2001 by Judge Edgar B. Gregory in Wilkes County District Court. Heard in the Court of Appeals 8 January 2003.

*Hall & Hall Attorneys At Law, P.C., by Susan P. Hall, for respondent-appellant.*

*No brief filed by petitioner-appellee.*

HUDSON, Judge.

The district court terminated the parental rights of Jimmy Shermer ("respondent") as to his son Buddy on September 19, 2001. Respondent appealed, arguing that there was not clear, cogent, and convincing evidence to support the trial court's findings and conclusions. We agree and reverse the decision of the district court.

## BACKGROUND

Respondent and Terri McDowell are the biological parents of Ernest Lee Shermer, born September 18, 1986, and Buddy Edward Shermer, born October 8, 1988. Both children are currently residing in foster care under the supervision of the Wilkes County Department of Social Services ("DSS") and have been under DSS's supervision since April 1999.

On June 28, 1999, the district court found both juveniles to be neglected as defined by North Carolina law. Respondent, who was incarcerated at the time and had been incarcerated since 1998, was not served with summons and, therefore, did not attend the hearing or seek the assistance of an attorney. He also did not attend other hearings in 1999 and 2000.

Prior to November 1999, DSS had been attempting to reunite Buddy and Ernest with their parents and was not seeking to terminate the parents' rights. By April 2000, however, DSS had changed its course of action and was seeking to terminate both parents' rights. The record only contains the last page of this April 2000 order, and we cannot discern the basis for DSS's change of direction.

On June 7, 2000, DSS filed a petition to terminate the parental rights of both parents. The mother voluntarily relinquished her rights. From prison, respondent contacted DSS and informed it that he did not want his rights terminated. He also sent a letter to the clerk of court stating that he was currently in prison but that he desired to be

IN RE SHERMER

[156 N.C. App. 281 (2003)]

present at all hearings, that he wanted an attorney, and that he intended to take responsibility for his children.

Respondent was released from prison on March 23, 2001. On April 4, 2001, he again contacted DSS and informed it that he did not want his parental rights terminated. The social worker told respondent that she would put a service and visitation plan in place but did not go into further detail at that time as to what these case plans would entail.

Respondent attended an agency review on July 5, 2001, when a DSS employee reviewed with respondent what would be expected from him. Respondent signed the case plan on July 13, 2001. It required respondent to (1) maintain appropriate housing and employment; (2) remain free of criminal activity; (3) attend parenting classes; (4) obtain a psychological evaluation; (5) have a drug and alcohol assessment and follow through with any recommendations from the assessment; (6) have regular contact with the social worker and keep her informed of any changes in housing, job, or finances; (7) have positive and ongoing visits with the boys at least once per month; (8) contact the social worker once per week to check on the boys; (9) participate in any therapy sessions with the boys as might be requested by the social worker; and (10) contact DSS to set up ongoing support for the children.

The district court held a hearing on September 19, 2001. It received testimony from Stephanie Sparks, a DSS employee and the caseworker for Buddy and Ernest. Sparks testified that respondent lived with his mother and had been living with her since he was released from prison. According to Sparks, respondent was not employed but had been attending vocational classes. There was no evidence that he had been involved in any criminal activity. Sparks testified that she had a certificate dated June 27, 2001, showing that respondent had completed the Alcoholics Anonymous program in prison.

Sparks testified that respondent had two visits with his children, one in July 2001 and one in September 2001, each with appropriate father-son type conversation. When the children see respondent, Sparks testified, they immediately run up and hug him. Sparks also indicated that respondent wrote her and asked her to have another visit near the end of August but that she could not accommodate the request. Respondent also wrote letters to his children on various occasions since he was released from prison.

**IN RE SHERMER**

[156 N.C. App. 281 (2003)]

Sparks further explained that she told respondent by letter in July 2001 that he could telephone the boys as long as he was working on his service and visitation plan. Respondent had expressed a desire to speak to the boys on the phone. Sparks was aware that respondent did not have a telephone but explained that respondent nonetheless called Ernest once or twice a week up until a few weeks before the hearing. Sparks testified that Buddy had moved to a new foster home shortly after respondent was released from prison and that she had not given respondent the telephone number where Buddy was residing.

Sparks had never done a home study of respondent's home, even though respondent had given her the address. She admitted that it would have been impossible for respondent to complete the service plan by the date of the hearing if respondent had been required to attend long-term therapy. Sparks also testified that respondent obtained a psychological examination but that the results were not back by the time of the hearing. Sparks indicated, however, that the examination did not reveal any areas of immediate concern.

Respondent also testified at the hearing. He explained that he loved his children and wanted to take responsibility for them. He also testified that he was making progress on the case plan. He described his visits with his sons and his other attempts to contact them by phone and letter. He testified that he did not have a problem attending the parenting classes required by the case plan but that he had not yet attended them because he could not leave the county as a condition of his parole. He also testified that DSS had wanted him to start the case plan in October but that he started it in July, two months early.

Respondent further testified that he does not read or write well and that his mother has been writing his letters to his children since his release from prison. While incarcerated, he had to ask others to write the letters for him. Regarding the phone calls, respondent testified that Sparks told him that the foster parents would not permit him to call Buddy. He explained that he had attempted to contact Sparks about this but that he only got her voice mail. As he did not have a phone, he could not leave a number for her to call him back. He explained that he had had a temporary job through Work Force for five weeks and that he is still signed up with that agency. Currently he is attending vocational classes.

The court also conducted an in-camera review of Buddy. Buddy told the court that he did not want his father's parental rights to be terminated and that he wanted to get along with his dad.

After hearing all the evidence, the court found that both children were neglected; that respondent willfully left them in foster care for more than 12 months; and that he willfully abandoned the children for at least six consecutive months. The court then determined that it was in Buddy's best interests that respondent's parental rights be terminated as to Buddy only. The court did not terminate respondent's parental rights as to Ernest.

Respondent now appeals.

## ANALYSIS

A termination of parental rights proceeding consists of two phases. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). In the adjudicatory stage, the petitioner—here, DSS—has the burden of proving by clear, cogent, and convincing evidence at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111. *Id.* We review whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), *appeal dismissed and disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001).

If DSS meets its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a) (2001); *In re Blackburn*, 142 N.C. App. at 610, 543 S.E.2d at 908. It is within the trial court's discretion to terminate parental rights upon a finding that it would be in the best interests of the child. *Id.* at 613, 543 S.E.2d at 910. We review the trial court's decision to terminate parental rights for abuse of discretion. *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002).

Here, the trial court found that DSS had proven three separate statutory grounds for termination. Since a court need only determine that one statutory ground exists in order to move to the dispositional stage, N.C. Gen. Stat. § 7B-1111(a), we must address each of the three grounds.

## A.

In his first argument, respondent contends that the finding of neglect or the probability of its repetition at the time of the termina-

tion proceeding was not based on clear, cogent, and convincing evidence. We agree.

N.C. Gen. Stat. § 7B-1111 lists neglect as one of the grounds for terminating parental rights and provides, in pertinent part:

> (a) The court may terminate the parental rights upon a finding of one or more of the following:

> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101.

N.C. Gen. Stat. § 7B-1111(a)(1). Neglect, in turn, is defined as follows:

> Neglected juvenile.—A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15).

Where, as here, a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect. *In re Pierce*, 146 N.C. App. 641, 651, 554 S.E.2d 25, 31 (2001), *aff'd*, 356 N.C. 68, 565 S.E.2d 81 (2002). This is because requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible. *In re Ballard*, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984). "The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding.*" *Id.* at 715, 319 S.E.2d at 232. Although prior adjudications of neglect may be admitted and considered by the trial court, they will rarely be sufficient, standing alone, to support a termination of parental rights, since the petition must establish that neglect exists at the time of hearing. *Id.* at 713-14, 319 S.E.2d at 231. Thus, the trial court must also consider evidence of changed conditions in light of the history of neglect by the parent and the probability of a repetition of neglect. *Id.* at 715, 319 S.E.2d at 232. In addition, visitation by the

parent is a relevant factor in such cases. *Pierce*, 146 N.C. App. at 651, 554 S.E.2d at 31.

Here, we see no clear, cogent, and convincing evidence and no finding that respondent has neglected his children or that any past neglect was likely to reoccur. The trial court took judicial notice of past orders in which it had found that both children were neglected. However, as respondent points out in his brief, conditions have changed since then. When the previous orders were entered, the children lived with Sherry Shermer, respondent's ex-wife, and respondent was in prison. The orders concerned one incident where Ms. Shermer allegedly fired a gun around the children and another where Ms. Shermer brought Buddy along on an attempt to help respondent escape from prison. Although these orders are relevant evidence in the termination proceeding, the trial court also was required to consider how conditions have changed since the time the orders were entered. *In re Tyson*, 76 N.C. App. 411, 416-17, 333 S.E.2d 554, 557-58 (1985).

Upon careful review of the evidence, we hold that the evidence of circumstances at the time of hearing did not support the conclusion that respondent was neglecting the children at that time or that any previous neglect was likely to reoccur. Ms. Shermer was no longer involved with the children. Respondent was out of prison and able and willing to care for his children. In fact, he told DSS from prison that he did not want his parental rights terminated, and he contacted DSS again less than two weeks after being released from prison. He lived with his mother, not Ms. Shermer. And, although he was not working, respondent was attending classes to better qualify him for employment. There was no evidence that he was engaged in any criminal activity.

Respondent visited with both Buddy and Ernest twice, once in July 2001 and once in September 2001. The first visit came just days after respondent met with DSS to set up and go over his case plan. Each visit went well and included appropriate father-son conversation. Sparks, the DSS caseworker, also testified that respondent wrote her and asked for another visit with his children near the end of August but that she could not accommodate the request.

Moreover, the evidence showed that respondent wrote letters to both his sons and called Ernest once or twice a week, even though he did not have a phone. Respondent did not call Buddy because Sparks had not given him the telephone number.

In short, DSS did not produce sufficient evidence of neglect at the time of the hearing to serve as the basis for terminating respondent's parental rights. *In re Tyson*, 76 N.C. App. at 416-17, 333 S.E.2d at 557-58 (holding that the evidence did not support termination of the mother's parental rights; although the juvenile had been adjudicated neglected in a prior hearing of which the mother did not have notice and in which she neither appeared nor was represented by counsel, the petitioner failed to present clear, cogent, and convincing evidence of neglect since that time).

The trial court did find that respondent had failed to complete various parts of his case plan; specifically, that he has not maintained employment, has not contacted the social worker once per week, has not participated in therapy sessions with either child, has not paid support or established a support obligation for the children, has not attended parenting classes, and has not had a drug and alcohol assessment. We do not agree that this finding constitutes clear, cogent, and convincing evidence of neglect or evidence that neglect could reoccur since respondent had been working on his case plan for less than two months at the time of the termination hearing. Respondent's obligations under DSS's case plan were first explained to him on July 5, 2001, and the plan was signed and agreed to on July 13, 2001. According to respondent, the plan was scheduled to begin in October 2001, but he began early. Sparks did not dispute this testimony about the time line.

The termination hearing took place in September 2001. We do not believe that adequate time had elapsed for an assessment of respondent's progress on the case plan. In light of the fact that many facets of the plan, such as the home study and psychological evaluation, had not been completed and were not scheduled for completion by the time of the hearing, we do not see clear, cogent, and convincing evidence one way or the other.

In sum, we conclude that the trial court's findings are not supported by clear, cogent, and convincing evidence of neglect at the time of the hearing and, in turn, that those facts do not support the trial court's conclusion that respondent neglected Buddy and Ernest within the meaning of N.C. Gen. Stat. § 7B-101(15).

B.

Respondent also contends that DSS did not prove by clear, cogent, and convincing evidence that he willfully left his children in

foster care for more than twelve months and that he had not made reasonable progress to correct those conditions that led to the children's removal. Again, we agree.

At the time DSS originally petitioned the trial court for custody of the children, in May 2000, the relevant portion of the controlling statute permitted a court to terminate a respondent's parental rights if:

> (2) The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made within 12 months in correcting those conditions which led to the removal of the juvenile.

N.C. Gen. Stat. § 7B-1111(2) (2000).[1] To uphold the trial court's order, we must find that the respondent's failure was willful, which is established when the respondent had the ability to show reasonable progress but was unwilling to make the effort. *In re Fletcher*, 148 N.C. App. 228, 235, 558 S.E.2d 498, 502 (2002). Our Supreme Court has held, under the applicable version of the statute, that the relevant time frame is the twelve-month period preceding the date of filing of the petition for termination of parental rights. *In re Pierce*, 356 N.C. 68, 75, 565 S.E.2d 81, 86 (2002).[2] Thus, in the instant case, we must examine whether the trial court found sufficient facts—based on clear, cogent, and convincing evidence of circumstances occurring in the twelve months immediately preceding DSS's petition for terminating respondent's parental rights—to support its conclusion that respondent had failed to show that reasonable progress had been made in correcting those conditions that led to the removal of his children. *Id.* at 76, 565 S.E.2d at 87.

Looking at the findings pertaining to Buddy, we do not find them sufficient to support the conclusion that DSS has shown grounds to terminate under § 7B-1111(2). The order terminating respondent's rights contains only a few findings, findings 12 and 13, specifically

---

1. The statute was amended in 2001 to delete the language "within 12 months." N.C. Gen. Stat. § 7B-1111(b) (2001). However, as in *In re Pierce*, 356 N.C. 68, 75, 565 S.E.2d 81, 86 (2002), the previous language applies here.

2. Only when considering whether termination is in the best interests of the child should a court consider evidence that occurred before or after the twelve-month period leading up to the filing of the petition for termination of parental rights. *Pierce*, 356 N.C. at 76, 565 S.E.2d at 86-87.

relating to Buddy. Subsection E of finding 13 is illegible and thus not reviewable by this Court. The court made no findings at all regarding respondent's progress or lack thereof during the twelve months prior to the filing of the petition on May 20, 2000, except that respondent had done little to contact the children. Although evidence beyond that period may be relevant in the dispositional phase, we do not consider findings regarding respondent's actions beyond that time frame (findings 25, 26, 27, 28) in determining whether adequate grounds were proven. *Pierce*, 356 N.C. at 75-76, 565 S.E.2d at 86-87.

We do not believe that these findings establish that respondent failed to make reasonable progress during the relevant time period. The petition to terminate his parental rights was filed on May 26, 2000. During the twelve months prior to that date, respondent was incarcerated. He had no involvement with the events that led to the children's removal—the children's stepmother was the custodian during that period, and it was her actions that precipitated these proceedings. Moreover, the record does not reflect when respondent learned that the children were in foster care, except to show that he was not served while in prison. Because respondent was incarcerated, there was little involvement he could have beyond what he did—write letters to Buddy and Ernest and inform DSS that he did not want his rights terminated. In sum, the evidence does not support findings or conclusions that respondent willfully left his children in foster care without making reasonable progress during the relevant time period.

C.

Respondent further argues that clear, cogent, and convincing evidence did not support the findings and conclusion that he had willfully abandoned his children. We agree.

Parental rights may be terminated where:

(7) The parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion.

N.C. Gen. Stat. § 7B-1111(7).

For the reasons set forth in part B, *supra*, we conclude that the record does not reflect clear, cogent, and convincing evidence, nor does it contain sufficient findings, to support the trial court's conclu-

IN RE SHERMER

[156 N.C. App. 281 (2003)]

sion that respondent willfully abandoned his children. Again, during the six months before DSS filed the termination petition, respondent was in prison. He did not have custody of the children, nor was he involved in their care. He maintained some contact with Buddy and Ernest, informed DSS that he did not want his rights terminated, and told DSS that he wished to maintain custody of his children. There are no findings to justify termination on this ground.

## D.

Respondent also points out that he was not properly served in this case. Specifically, respondent never was served with summons in connection with the hearing held in June 1999 pursuant to which the trial court entered an order finding that Buddy and Ernest were neglected juveniles. Respondent also did not attend hearings held in October 1999, March 2000, and September 2000, although the record does not clearly reflect the reasons.

A defect in service of process is jurisdictional, rendering any judgment or order obtained thereby void. *Fountain v. Patrick*, 44 N.C. App. 584, 586, 261 S.E.2d 514, 516 (1980). Thus, if service of process on the respondent were defective, the orders adjudicating respondent's children neglected would be void, and respondent could be relieved from the judgment. N.C. Gen. Stat. § 1A-1, Rule 60(b). However, we do not believe that the record is sufficiently clear on this issue to warrant voiding the order on this basis. Thus, in light of our holding on the sufficiency of the findings, we decline to void the order for defective service. We have concluded that the findings do not support the trial court's conclusion that DSS proved any statutory grounds to terminate respondent's parental rights.

## CONCLUSION

For the reasons set forth above, the order terminating respondent's parental rights is reversed.

Reversed.

Judges MARTIN and STEELMAN concur.