IN THE MATTER OF: A.G.
No. COA08-1376
Court of Appeals of North Carolina
Filed March 17, 2009
This case not for publication
Lauren Vaughan, for petitioner-appellee, Iredell County Department of Social Services.
Katherine Freeman, for respondent-appellant, mother.
CALABRIA, Judge.
Respondent appeals from an order terminating her parental rights to her son, A.G. The trial court found that respondent willfully left A.G. in foster care for over twelve months and did not make reasonable progress in correcting the conditions which led to the removal of the child from her care. We affirm.
The Iredell County Department of Health and Human Services ("DSS") became involved with respondent when, in the fall of 2004, DSS received reports regarding the care of A.G. and domestic violence between respondent and A.G.'s father. DSS's assessment found that respondent lacked stable housing, had no financial means to support A.G., and had not filed a domestic protective order against A.G.'s father despite being advised to do so. On 3 January 2005, respondent contacted DSS, told DSS that she was unable tocare for A.G. because she had no diapers, food or wipes in her home, and requested DSS take custody of A.G. At an emergency assessment meeting held the next day, respondent admitted to crying several times a day and needing counseling. Respondent, who was in Child Protective Services as a minor, had been diagnosed with Impulse Control Disorder, ADHD, and Adjustment Disorder with mixed disturbance of emotions and conduct. On 4 January 2005, DSS filed a juvenile petition alleging that A.G. was a neglected and dependent juvenile and took nonsecure custody of A.G.
The trial court held an adjudication hearing on 16 February 2005. The trial court found: respondent was unemployed; respondent was facing eviction by her landlord; respondent tested positive for marijuana on 8 February 2005; charges of communicating threats were filed against respondent; and DSS had referred respondent to mental health services but respondent missed the appointment. Based on these findings, the trial court adjudicated A.G. a dependent juvenile. The trial court ordered respondent to participate in parenting classes and demonstrate skills learned, complete mental health and substance abuse assessments and follow the recommendations, secure stable housing and employment, and establish child support for A.G.
The matter came for review on 24 May 2005. At that time, respondent was staying with her boyfriend's parents. The court found that respondent had tested positive for drugs on 21 February and 29 March 2005. The court further found that respondent had started attended parenting classes and had not completed asubstance abuse assessment. The trial court ordered respondent to comply with her case plan and continued custody of A.G. with DSS. On 6 December 2005, the parties entered an agreement allowing for overnight visitation between the respondent and A.G.
The next review hearing was held on 31 January 2006. By order filed 16 February 2006, the trial court found that respondent had given birth to another son in January 2006; that respondent and her boyfriend had been involved in domestic violence incidents; that respondent was being evicted from her residence; that DSS arranged for respondent to reside at My Sister's House Shelter where she would have unsupervised visitation with A.G.; and that respondent was working on her parenting skills. The trial court ordered respondent to comply with her case plan, to participate in anger management classes and begin domestic violence counseling through My Sister's House Program. The trial court continued custody of A.G. with DSS.
On 7 March 2006, DSS filed a "Motion for Review" requesting a review of respondent's visitation. DSS alleged that respondent was not residing at the domestic violence shelter; that she is continuing to see her boyfriend who physically assaulted her in January 2006; and that DSS had witnessed respondent be "excessively verbally hostile and [] unable to handle any frustration in the presence of her children." The review hearing was continued by an agreement of all parties in April 2006. DSS, however, filed another "Motion for Review" on 24 May 2006. DSS alleged that respondent had been violent during visitations, hadthreatened physical force upon social workers, had used profanity toward social workers in the presence of A.G., and had been escorted away during visitation due to her violent tendencies. The motion noted that DSS was suspending visitation between the minor child and respondent until the matter could be reviewed in June 2006.
After a hearing on 20 June 2006, the trial court entered a permanency planning order. The trial court found that respondent continued to have problems with domestic violence, resulting in criminal charges; that on 24 February and 24 May 2006, respondent became hostile with social workers in front of A.G; that respondent was evicted from a homeless shelter due to anger problems with staff; respondent failed to get treatment for her violent behavior despite social workers making appointments with the Delta Center and Triumph; and that on 2 May 2006, respondent refused DSS's request for a blood test causing concern about her illegal drug use. The trial court also found that respondent had not shown the progress necessary to regain custody of A.G. and that A.G. was doing well in his placement. The trial court relieved DSS of reunification efforts, ordered a final visit with A.G., and changed the plan of care from reunification to the termination of parental rights and adoption.
The trial court held other permanency planning hearings on 19 September 2006, 13 March 2007 and 28 August 2007. During this time, respondent continued to have anger issues, was fired from her job at Pizza Hut for assaulting the manager, and remained homeless. The trial court continued the permanent plan of adoption and again ordered a final visit for respondent. On 19 October 2007, DSS filed a petition to terminate the parental rights of respondent. Another permanency planning review was held on 26 February 2008 and the trial court continued the permanent plan of adoption. On 11 March 2008, the trial court dismissed the petition to terminate parental rights without prejudice, based upon the failure of DSS to issue a summons directed to the child or to the child's Guardian ad Litem.
On 12 May 2008, petitioner filed another petition to terminate parental rights o f respondent on the grounds that she willfully left A.G. in foster care without showing reasonable progress under the circumstances pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), and that she failed to pay a reasonable portion of the cost of care for the child under N.C. Gen. Stat. § 7B-1111(a)(3). The trial court held a hearing on the termination petition and concluded that grounds existed to terminate respondent's parental rights under both sections . The trial court further concluded that it was in the best interest of A.G. to terminate respondent's parental rights. An order terminating respondent's parental rights was filed on 29 August 2008 and an amended order was filed on 8 September 2008. Respondent appeals.
Respondent contends the trial court erred by finding and concluding that sufficient grounds existed to terminate her parental rights.
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase that is governed by N.C. Gen.Stat. § 7B-1109 (2008) and (2) a disposition phase that is governed by N.C. Gen. Stat. § 7B-1110 (2008). See In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5 (2004), disc. review denied, 358 N.C. 543, 599 S.E.2d 42 (2004). During the initial adjudication stage, petitioner has the burden of proving by clear, cogent, and convincing evidence the existence of one or more of the statutory grounds for termination set forth in N.C. Gen. Stat. § 7B-1111. Id. The standard of review of the adjudication phase of termination of parental rights is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support its conclusions of law. See In re Oghenekevebe, 123 N.C. App. 434, 439-41, 473 S.E.2d 393, 397-99 (1996). "If DSS meets its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child." In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003). The trial court may then terminate parental rights upon a finding that it would be in the best interests of the child to do so. Id. at 285, 576 S.E.2d at 406-07.
A court may terminate parental rights upon a finding that:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
N.C. Gen. Stat. § 7B-1111(a)(2)(2007). "Willfulness" under N.C. Gen. Stat. § 7B-1111(a) "means something less than willful abandonment," and "does not require a showing of fault by the parent." Oghenekevebe, 123 N.C. App. at 439, 473 S.E.2d at 398 (citations omitted). Willfulness may be found where a parent has made some attempt to regain custody of the child but has failed to exhibit "reasonable progress or a positive response toward the diligent efforts of DSS." Id. at 440, 473 S.E.2d at 398.
To support its determination that respondent willfully left A.G. in foster care, the trial court made, in pertinent part, the following findings of fact:
4. That custody of the minor child was placed in and with the Petitioner pursuant to a Nonsecure custody order entered on January 4, 2005, with such nonsecure custody being continued after subsequently held nonsecure custody hearings, and pursuant to an order entered following an adjudication hearing held on or about the 16th day of February 2005, wherein the minor child was found to be a dependent juvenile.
9. That the Respondent Parents are not fit and proper persons to have custody of the minor child [] in that:
. . .
c. The Respondent Mother entered into a case plan with the Iredell County Department of Social Services to address the following goals: obtain and maintain stable employment; obtain and maintain housing; complete her GED; complete stress management classes; obtain a domestic violence assessment and follow through with all recommendations; refrain from engaging in any further incidents of domestic violence; and participate in individual parent training with Amy Eisele, an Exchange/SCAN worker. The Respondent Mother was also court-ordered to enroll in and participate in parenting classes, complete a mental health evaluation and follow through with all treatment recommendations; complete a substance abuse assessment and follow through with all treatment recommendations, and attend anger management classes and follow through with all recommendations of the anger management class.
d. The Respondent Mother failed to complete her case plan.
e. The Respondent Mother has failed to obtain and maintain safe and stable housing, as she resided in at least sixteen (16) different residences in the six (6) months preceding the filing of the TPR Petition, and was evicted from her last residence in May 2008. The Respondent Mother testified that she has been living with her former foster brother [] for the last two months.
f. The Respondent Mother has failed to obtain and maintain employment, as she has had several different jobs since the minor child came into care. The Respondent Mother worked at Shell gas station for two and a half months, at NGK Ceramics for six (6) weeks, and various positions through a temporary employment agency; the Respondent Mother was fired from Shell and NGK Ceramics because she did not show for work. The Respondent Mother has been working at her current employer, Dominos, for six (6) weeks.
g. The Respondent Mother testified that she obtained her GED, but could provide no proof or evidence that she has obtained it.
h. The Respondent Mother has failed to complete anger management classes. She attended anger management classes at Exchange/SCAN for approximately seven (7) months, but was not allowed to return and has not followed through with attending anger management classes with another provider.
j. The Respondent Mother continues to be involved in domestic violence incidents, including a November 2007 incident involvingT.L., her ex-boyfriend and the father of the Respondent Mother's other two children.
. . .
aa. Neither of the Respondent Parents made any reasonable progress in attempting to reunify with the minor child.
cc. The Court cannot find any progress that has led to reunification. Even in 2006, this Court said that reunification would be futile because the Respondent Parents were not doing anything. The Court cannot find that the Respondent Mother completed even one (1) goal of her case plan.
dd. Since the minor child came into care, the Respondent Mother has had difficulty with stability for more than three (3) months at a time, as she has been in and out of shelters and various residences. Furthermore, in January 2006, this Court found, among other things, that the Respondent Mother still needed to complete domestic violence counseling, maintain stable housing, participate in anger management and follow all recommendations of that treatment, and pay child support  there is no evidence today that the Respondent Mother has done these things.
Respondent assigns error to many of the above findings of fact, however, she has failed to specifically argue in her brief that they are unsupported by the evidence. Consequently, respondent has abandoned her assignments of error on these issues, and the findings of fact are deemed binding on appeal. See In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence") . In addition, a review of the record and transcript shows that each of the trial court's findings is basedupon competent evidence, including orders entered in the case and testimony from DSS social workers.
The trial court's uncontested findings demonstrate that respondent willfully left A.G. in foster care for over twelve months and did not make reasonable progress in correcting the conditions which led to the removal of the child from her care. Respondent's inability to maintain stable housing and employment, as well as her failure to address her domestic violence and mental health issues, supports the trial court's conclusion that grounds exist to terminate respondent's parental rights based on failure to make reasonable progress. Accordingly, the trial court properly found and concluded that respondent's lack of progress justified termination of her parental rights under Section 7B-1111(a)(2). Since we find that the trial court properly based termination on the ground of failure to make reasonable progress pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), we need not address respondent's arguments regarding the remaining ground for termination. See Shermer, 156 N.C. App. at 285, 576 S.E.2d at 406.
Respondent also contends the trial court abused its discretion in concluding during the dispositional stage that the termination of her parental rights was in the best interest of A.G.
In determining whether terminating the parent's rights is in the child's best interest, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110 (2007).
The trial court made the following findings of fact to support the court's determination that it was in the best interest of A.G. to terminate respondent's parental rights:
a. That the minor child has been in the custody of the Iredell County Department of Social Services since January 4, 2005.
b. That the minor child has been in the same foster placement since coming into care three and a half years ago.
c. That the minor child attends weekly occupational and speech therapy.
d. That the minor child has been diagnosed with autism.
e. That the minor child's current placement love him and want to adopt him, and they are the only family the minor child has ever known.
f. That there are no barriers to adoption.
g. That the minor child's needs are currently being met.
. . .
i. That there is little or no bond existing between the minor child and the Respondent Mother [] since they have not seen each other in over a year.
. . .
k. The Court is convinced now more than ever that it is in the minor child's best interests that the Respondent Mother and Respondent Father's parental rights be terminated.
Respondent challenges the trial court's reliance on A.G.'s autism diagnosis. A review of the record shows that the above diagnosis is based upon DSS court reports and testimony from the DSS social worker. Further, based upon the trial court's findings, which reflect a rational reasoning process, we conclude that the trial court did not abuse its discretion in its determination that terminating the parental rights of respondent-mother was in the best interest of A.G.
We affirm the trial court's order terminating the parental rights of respondent.
Affirmed.
Judges HUNTER, Robert C. and BRYANT concur.
Report per Rule 30(e).