IN THE MATTER OF: E.K. and J.R.
No. COA09-1571.
Court of Appeals of North Carolina.
Filed May 4, 2010.
Elizabeth Myrick Boone, for Duplin County Department of Social Services, petitioner-appellee.
Pamela Newell Williams, for Guardian ad Litem.
Mary McCullers Reece, for respondent-appellant.

UNPUBLISHED OPINION
JACKSON, Judge.
Respondent-mother ("respondent") appeals from the 4 September 2009 orders terminating her parental rights to her children, E.K. and J.R. ("the children"). For the following reasons, we affirm.
Respondent is the natural mother of J.R., age 12; E.K., age 10; and R.C., age 4. Gerardo R. is the natural father of J.R. and E.K., and Pedro C. is the natural father of R.C.[1] Duplin County Department of Social Services ("DSS") has been involved with respondent since 2004. In November 2007, DSS substantiated reports that respondent and her then-husband were disciplining the children inappropriately and allowing drug use in the presence of the children. Respondent entered into a case plan, and DSS initiated case management services. DSS substantiated additional reports of inappropriate discipline in January and March 2008. On 13 March 2008, DSS filed documents with the trial court as to both children and placed J.R. and E.K. into a therapeutic foster care home.
The trial court held an adjudication and disposition hearing on 30 April 2008. By order filed 15 May 2008, the trial court adjudicated J.R. and E.K. neglected juveniles. The trial court found that respondent admitted "to using a belt and a piece of board as a paddle" to discipline the children; that respondent "did not seek medical attention [for E.K.'s] urinary tract infection until school officials, case managers and [DSS] required her to do so[;]" that respondent "sent [J.R. and E.K.] to a bootlegger's home after dark in order to purchase cigarettes and beer[;]" that respondent used marijuana in the presence of the children; and that respondent stipulated to a finding of neglect. The trial court further found that respondent was "currently taking parenting classes through Cooperative Extension" and was attending "counseling for substance abuse and anger management." The trial court concluded that J.R. and E.K. should remain with DSS and that the current plan for the children was reunification. The trial court ordered respondent to have supervised visits with the children; "attend and complete parenting classes and substance abuse counseling and follow all the recommendations[;]" "attend anger management classes and follow all recommendations[;]" and submit to random drug tests.
The trial court held a review hearing on 25 June 2008. By order filed 8 July 2008, the trial court found that respondent, who was diagnosed with bipolar disorder, was receiving counseling through ACTS; that respondent had missed the last three appointments concerning her medication and should be out of her medication by that time; that respondent had received substance abuse counseling through ACTS until April 2008 when her counselor left; that respondent's two drug tests were negative; that respondent was attending monthly parenting classes through Cooperative Extension; that respondent and her then-husband were evicted from their residence in June 2008; and that all visits with the children had gone well. The trial court continued custody of the children with DSS with a current plan of reunification. The trial court ordered respondent to attend and complete parenting classes and substance abuse counseling, to attend anger management classes and follow through with recommendations, and to obtain and maintain stable housing and employment.
On 3 September 2008, the trial court held a permanency planning hearing. By order filed 25 September 2008, the trial court found that respondent had left her husband in August 2008 and had moved in with a new boyfriend in a home with seven people; that respondent had completed her parenting classes through Cooperative Extension; and that respondent stated that she was receiving substance abuse counseling at Lawson House, but DSS was unable to verify that information. The trial court further found that respondent wished for the children to be placed with her mother, Esther C., in Pennsylvania. The trial court ceased reunification efforts, changed the permanent plan to custody and/or adoption, and continued custody with DSS. The trial court ordered DSS to complete an Interstate Compact Home Study on respondent's parents.
The trial court held a review hearing on 18 February 2009 and entered an order on 27 March 2009. The trial court found that the maternal grandparents' home was not approved as a kinship placement. As to the children, the trial court found that J.R. and E.K. had been in the same therapeutic foster care placement since 13 March 2008; that J.R. and E.K. "should remain in the current placements as they ha[d] been stable and consistent for [them;]" and that the foster parents wanted the children to remain with them. The trial court further found that respondent had failed to show to the court that she had made reasonable progress toward reunification with the children and that the plan should be changed to adoption as to J.R. and E.K. The trial court ordered that custody remain with DSS.
Another permanency planning hearing was held on 18 March 2009. By order entered 7 April 2009, the trial court found that "[d]uring the [3 September 2008] court hearing[,] reunification efforts with the respondent mother were ceased at the request of the respondent mother. The respondent mother requested last month that the court reconsider ordering reunification efforts as she had decided she wanted to keep her children." The trial court also found that there was a strong possibility that neglect would continue if the children were returned to respondent. The trial court ordered that reunification efforts remain ceased, that the children remain in foster care, and that the permanent plan be changed to adoption.
On 27 April 2009, DSS filed petitions to terminate the parental rights of respondent as to each child. The petitions alleged that grounds existed to terminate the parental rights of respondent pursuant to North Carolina General Statutes, section 7B-1111(a)(1) (neglect) ("section 7B-1111(a)(1)"); North Carolina General Statutes, section 7B-1111(a)(2) (failure to make reasonable progress) ("section 7B-1111(a)(2)"); North Carolina General Statutes, section 7B-1111(a)(3) (failure to pay reasonable childcare costs) ("section 7B-1111(a)(3)"); and North Carolina General Statutes, section 7B-1111 (a)(6) (incapability of providing care) ("section 7B-1111(a)(6)"). The trial court held a hearing as to the termination petitions on 19 August 2009. The trial court concluded that grounds existed to terminate respondent's parental rights pursuant to section 7B-1111 based upon both neglect and dependency. The trial court further concluded that it was in the best interests of E.K. and J.R. to terminate respondent's parental rights. Respondent appeals.
Respondent contends that the trial court erred by concluding that she willfully had left her children in foster care for more than twelve months without showing reasonable progress in correcting the conditions that led to the children's removal from her home. We disagree.
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase that is governed by North Carolina General Statutes, section 7B-1109 and (2) a disposition phase that is governed by North Carolina General Statutes, section 7B-1110. See In re Shepard, 162 N.C. App. 215, 221, 591 S.E.2d 1, 5, disc. rev. denied, In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004). During the initial adjudication stage, DSS has the burden of proving by clear, cogent, and convincing evidence the existence of one or more of the statutory grounds for termination set forth in North Carolina General Statutes, section 7B-1111. Id. Our review of a trial court's determination at the adjudication phase is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support its conclusions of law. See In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 39798 (1996). "If DSS meets its burden of proving at least one ground for termination, the trial court proceeds to the dispositional phase and must consider whether termination is in the best interests of the child." In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003) (citations omitted). The trial court then may terminate parental rights upon a finding that it would be in the best interests of the child to do so. Id. at 285, 576 S.E.2d at 40607.
Pursuant to section 7B-1111(a)(2), a court may terminate parental rights on the ground that "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). The twelve-month period for the evaluation of reasonable progress pursuant to section 7B-1111(a)(2) is not limited to the twelve months immediately preceding the filing of the petition. In re Pierce, 356 N.C. 68, 75 n.1, 565 S.E.2d 81, 86 n.1 (2002). The willful leaving of the child is "something less than willful abandonment" and "does not require a showing of fault by the parent." In re Oghenekevebe, 123 N.C. App. at 439, 473 S.E.2d at 398 (citations omitted). A finding of this ground may be made when the parent has made some attempt to regain custody of the child but has failed to show reasonable and positive progress. In re Nolen, 117 N.C. App. 693, 699700, 453 S.E.2d 220, 22425 (1995).
In the instant case, the trial court found that DSS assumed custody of the children on 13 March 2008, and respondent does not assign error to this finding. At the time that the petitions for termination of parental rights were filed on 27 April 2009, more than twelve months had passed. The question before us, then, is whether respondent made reasonable progress toward correcting the circumstances that led to the removal of the children from her care.
DSS removed the children from respondent's care due to inappropriate discipline, including physical abuse; drug use; and lack of attention to the children's medical needs. Respondent was to complete parenting classes, substance abuse counseling, and anger management counseling and to follow the recommendations resulting from those. In support of its conclusion that respondent did not make reasonable progress toward these goals, the trial court made the following findings in its termination orders:
25. The respondent mother attended substance abuse counseling through ACTS until April 2008, when her counselor left to go to Lawson House. She was advised to seek other counseling but did not do so. The respondent mother testified that she attended two (2) sessions at Lawson's House[;] however, [DSS] could not confirm this information.
26. The respondent mother was receiving individual counseling, anger management counseling and her prescribed medications through Alternative Care Treatment Services (ACTS). The respondent mother was diagnosed with bi-polar and prescribed medications. The respondent mother was discharged from ACTS [on] or about August of 2008 for failure to attend scheduled counseling session and medication appointments.
27. The respondent mother never sought other individual counseling and is not currently on medication. She does not believe the diagnosis is correct and does not feel she require[s] medication or counseling any more. The respondent mother testified that she had not had any psychological episodes requiring treatment in over a year.
28. The respondent mother has resided at several locations during the court involvement. She was residing with [her then-husband] Mr. Morrisey until August of 2008. She then moved in with another man on or about August 12, 2008 in the same mobile home park where she was living with Mr. Morrisey. The respondent mother has not shown stability as it relates to housing throughout the entire case.
29. On August 18, 2008 the respondent mother was residing in Rose Hill, North Carolina with her boyfriend. She then moved to Wallace, North Carolina in November of 2008 and was living with a different man. She is currently living with her husband Marco O[.] in Beulaville, North Carolina where she has been since May of 2009. She and her husband began living together in November of 2008.
30. The respondent mother was unemployed until May of 2009. She was then employed by a temporary agency called Ambassador. She was laid-off after four (4) weeks of work and then began working in tobacco fields. She is currently working at House of Raeford where she has been working since July of 2009.
31. The respondent mother has not been allowed visits with the minor child since September 2, 2008.
32. The respondent mother is under a child support order in the amount of $149.00 per month plus $50.00 a month on arrears. She is currently in arrears $2,352.87. No payments have been received since June 25, 2009.
33. There is currently an order of arrest out on the respondent mother for failure to appear in child support court.
Of these findings, respondent challenges only Finding of Fact 28.[2] The remaining findings are uncontested and therefore, "are presumed to be correct and supported by evidence." In re Moore, 306 N.C. 394, 404, 293 S.E.2d 127, 133 (1982) (citations omitted).
A review of the record and transcript shows that Finding of Fact 28 is based upon competent evidence, including testimony from respondent. At the hearing, respondent testified that, by 10 August 2008, she had moved out of the mobile home she shared with her then-husband, and by 12 August 2008, she had moved into another mobile home with a boyfriend. She also testified that she had moved in with a new boyfriend by 10 November 2008. Respondent further testified that she had moved in with another boyfriend, her current husband Marco, in March 2009; then lived with a friend in Teachey for a week; and then lived with Marco and his brother beginning on 1 May 2009. This testimony is competent evidence upon which the trial court could base Finding of Fact 28.
Finding of Fact 28 and the remaining uncontested findings show that as of the date of the termination hearing, respondent was unable to maintain stable housing, failed to complete anger management and substance abuse counseling, and was not taking her medication as recommended. We hold that these findings of fact provide ample support for the trial court's conclusion that respondent willfully left the children in foster care for more than twelve months without showing reasonable progress toward changing the circumstances that led to the removal of the children from her care.
Because we hold that the trial court's conclusion that respondent did not show reasonable progress was supported by its findings of fact, which were, in turn, either uncontested or supported by competent evidence, we do not address respondent's remaining contentions as to the other grounds for termination. See In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984) (a finding of one statutory ground is sufficient to support the termination of parental rights).
Respondent also argues that the trial court abused its discretion in concluding that the termination of her parental rights was in the best interest of J.R. and E.K. We disagree.
In determining whether terminating the parent's rights is in the juvenile's best interest, the court shall consider the following factors:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110 (2007). The trial court exercises its discretion in determining whether termination is in the best interests of the minor child. In re C.W. & J.W., 182 N.C. App. 214, 219, 641 S.E.2d 725, 729 (2007) (citing In re Montgomery, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984)). "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
The trial court made the following unchallenged findings of fact to support its determination that it was in the best interests of J.R. to terminate respondent's parental rights:
10. The minor child, [J.R.], was born on [] 1997, in Dauphin County, Pennsylvania. . . .
. . . .
13. The minor child has been in foster care consistently since March 13, 2008, due to the respondent mother being unable to obtain suitable placement for her child. At the time of the hearing, there was no suitable adoptive foster home placement for the minor child of this action.
. . . .
31. The respondent mother has not been allowed visits with the minor child since September 2, 2008.
The trial court made the same findings of fact as to E.K., except that her birth date was recorded as "[] 1999" within Finding of Fact 10.
Respondent does not challenge the above findings on appeal, and therefore, they are binding on this Court. In re Pierce, 67 N.C. App. at 259, 312 S.E.2d at 902. These uncontested findings refer to the children's birth dates, the fact that no suitable adoptive foster home was available then, and the fact that the respondent had not been allowed to see the children for at least eleven months. These findings implicate the statutory factors that the trial court was required to consider, and therefore, we cannot say that the trial court's decision is manifestly unsupported by reason.
We affirm the trial court's order terminating the parental rights of respondent.
Affirmed.
Chief Judge MARTIN and Judge STROUD concur.
Report per Rule 30(e).
NOTES
[1] Respondent's youngest child R.C. is not part of this action.
[2] Although respondent's enumerated assignments of error include alleged errors as to other findings of fact, she has neither included nor argued those in her brief. Therefore, they are deemed abandoned. N.C. R. App. P. 28(b)(6) (2007) ("Assignments of error . . . in support of which no reason or argument is stated . . . will be taken as abandoned.").