An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of A p p e l l a t e   P r o c e d u r e .

NO. COA13-855

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

IN THE MATTER OF:       New Hanover County
               Nos. 11 JT 128, 130
T.M.M., N.D.M.


   Appeal by respondent-mother from orders entered 15 November 2012 and 22 May 2013 by Judge J.H. Corpening, II, in New Hanover County District Court. Heard in the Court of Appeals 27 January 2014.

> *Staff Attorney Gail Carelli for petitioner-appellee New Hanover County Department of Social Services.*
>
> *Richard Croutharmel for respondent-appellant mother.*
>
> *Troutman Sanders LLP, by Jennifer M. Hall, for guardian ad litem.*

   BRYANT, Judge.


   Respondent-mother appeals from the trial court's 22 May 2013 order terminating her parental rights to T.M.M. and N.D.M., as well as the trial court's 16 November 2012 permanency

planning order ceasing reunification efforts. We affirm in part and dismiss in part.

On 9 May 2011, the New Hanover County Department of Social Services ("DSS") obtained nonsecure custody of T.M.M. ("Tom"), N.D.M. ("Nancy") and C.D.M. ("Cody") and filed a juvenile petition alleging abuse and neglect.[1] DSS filed an amended petition on 17 May 2011. The petition alleged that one-year-old Cody was presented to his daycare with cuts and bruises on his face and lip, as well as hand-shaped bruising on his back and buttocks. Neither respondent, nor Cody's father ("Herman"), offered a plausible explanation for the injuries. The petitions further alleged that based on the injuries sustained by Cody, Tom and Nancy were living in an environment injurious to their welfare and not receiving proper care or supervision.

In an order entered on 21 September 2011, the trial court adjudicated all three children neglected, based on respondent's stipulation. The trial court found as fact the allegations contained in the petitions and continued custody of the children with DSS.

In a permanency planning order entered 16 November 2012, the trial court relieved DSS of reasonable reunification efforts

---

[1] Tom, Nancy and Cody are pseudonyms used to protect the identities of the juveniles pursuant to N.C.R. App. P. 3.1(b).

and changed the permanent plan for the children to adoption. The trial court found that the children had "been in foster care for seventeen (17) months without any parent demonstrating a consistent long-term commitment to addressing the issues which caused the children to come into the Department's custody[.]" The court further found that during a trial home placement with Tom, DSS received a report that Herman was back in respondent's home; that respondent admitted he had been in her home on three occasions; that Tom had witnessed domestic violence between Herman and his mother; and that by exposing Tom to Herman, respondent acted in contravention of prior court orders.

On 14 December 2012, DSS filed a petition to terminate respondent's parental rights to Tom and Nancy, alleging neglect as the sole ground for termination. *See* N.C. Gen. Stat. § 7B-1111(a)(1) (2011). Prior to the petition, respondent and Herman relinquished their parental rights to Cody. The trial court conducted a termination of parental rights hearing on 22 and 25 April 2013. In an order entered on 22 May 2013, the trial court found the existence of neglect as a ground for termination. The trial court also concluded that it was in the juveniles' best

interest to terminate respondent's parental rights.[2]   Respondent appeals.

*I.*

In her first argument on appeal, respondent challenges the trial court's cessation of reunification efforts in its 16 November 2012 permanency planning order.  Because respondent has not properly preserved this issue for appeal, we dismiss her argument.

Pursuant to N.C. Gen. Stat. § 7B-507(c), "[a]t any hearing at which the court orders that reunification efforts shall cease, the affected parent, guardian, or custodian may give notice to preserve the right to appeal that order in accordance with G.S. 7B-1001."  N.C.G.S. § 7B-507(c) (2013).  Furthermore, such an order may be appealed only if it is "properly preserved" in accordance with N.C. Gen. Stat. 7B-1001(a)(5).

Here, respondent failed to give notice to preserve her right to appeal the order ceasing reunification efforts.  She neither objected at the hearing, nor filed a written notice of intent to appeal the order at any time during the pendency of the case.  Because respondent failed to comply with the statutory requirements of N.C.G.S. §§ 7B-507(c) and 1001(b)(5),

---

[2] The trial court also terminated the parental rights of Tom and Nancy's fathers, but they are not parties to this appeal.

she has not preserved this issue for appellate review. *In re S.C.R.*, 198 N.C. App. 525, 530, 679 S.E.2d 905, 908 (2009) (declining to address the respondent's challenge to an order ceasing reunification efforts where the respondent failed to give notice of intent to preserve his right to appeal in accordance with a prior version of the statute).

*II.*

In her second argument on appeal, respondent challenges the trial court's termination of her parental rights based on neglect. North Carolina General Statutes, section 7B-1111 provides, in pertinent part:

> (a) The court may terminate the parental rights upon a finding of one or more of the following:
>
> (1) The parent has abused or neglected the juvenile. The juvenile shall be deemed to be abused or neglected if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101 or a neglected juvenile within the meaning of G.S. 7B-101.

N.C.G.S. § 7B-1111(a)(1) (2013). Neglect, in turn, is defined as follows:

> Neglected juvenile. — A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided

necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15) (2013).

The following findings of fact address this ground for termination:

6. That the Department first became involved with [respondent] due to her child [Cody] presenting to daycare with intentionally inflicted bruises on his face, thigh, and buttocks. Neither [respondent] or [Cody's] father [Herman] could offer a plausible explanation as to how those bruises occurred. All three [] children were adjudicated neglected on August 24, 2011. Both [Herman] and [respondent] subsequently relinquished their parental rights to [Cody] on October 15, 2012 and October 31, 2012 respectively.

7. That [Tom] has been in therapy with Shelley Chambers continuously since October 2012. He is diagnosed with Adjustment Disorder with mixed emotions and conduct, Post Traumatic Stress Disorder, and is a Child Victim of Abuse. That he has had multiple foster care placements due to severe behavioral problems. That he suffers from anxiety, guilt and trauma related to witnessing domestic violence in the home. That he has disclosed to therapist Chambers that he witnessed his mother being assaulted by [Herman] on more than one occasion. That he remains fearful of [Herman]. That

exposure to [Herman] is traumatizing to him, and is a significant trigger to an adverse emotional reaction and regression in behavior. That he has also had some emotional conflict in attaching to his current foster parent, as his mother has made him feel disloyal if he forms a bond with his foster mother. That he has expressed feeling safe in his current foster placement.

8. That [Herman] did assault [respondent] on more than one occasion, that he has left visible marks including bruises and scratches, and that he has assaulted [respondent] in the presence of [Tom] on more than one occasion. That this Court finds [respondent's] often contradictory testimony to the contrary, in light of all the evidence presented, to lack credibility.

9. That notwithstanding the completion of parenting classes, empowerment classes, and individual therapy for over a year, [respondent] has yet to demonstrate any understanding of the effects of domestic violence on her children. That the testimony of her therapist and her own testimony illustrates to this Court that [respondent] does not understand the cycle of abuse or how it pertains to her. That during a trial home placement of [Tom] in June and July of 2012, [respondent] sought out [Herman] and invited him to her home on more than one occasion. That [respondent's] pattern of engaging in abusive relationships and the failure to understand how to avoid them poses a significant and ongoing risk of neglect to her children should they be returned to her care.

We review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]" *In re Oghenekevebe*, 123 N.C. App. 434, 435—36, 473 S.E.2d 393, 395 (1996) (citation omitted). Respondent specifically challenges portions of finding of fact numbers 7 through 9. The remaining findings of fact remain uncontested because respondent does not challenge them. *See In re M.D.*, 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009). We address each challenged finding in turn.

Respondent disputes the portion of finding number 7 in which the trial court found that Tom's exposure to Herman is traumatizing and is a significant trigger to an adverse emotional reaction and regression in behavior. Respondent essentially argues that this finding is not supported by the testimony of Tom's therapist. We disagree. Shelley Chambers, a licensed clinical social worker, testified at the termination hearing. Chambers was Tom's therapist and had seen him 17 times since October 2012. Chambers testified that Tom was "diagnosed with an adjustment disorder with mixed disturbance of emotions and conduct, and he has symptoms as well with post-traumatic

stress, and he's a child victim of abuse." Chambers elaborated on Tom's diagnoses, indicating that he was holding onto the memories of domestic violence, that his behavioral issues were related to post-traumatic stress, and that there were certain triggers to his behaviors. Chambers also provided the following testimony:

> Q. Could you comment on what the impact on [Tom] might be if he were returned home to his mother and she did engage in another -- if [Herman] did come around or another person who was abusive towards her was around?

> A. Well, it could -- it could stunt his emotional growth. You know, due to the experience that he's had very early, he's already, you know, at great risk for anxiety and depression. So, encountering another violent relationship could be very consuming to him and it could put a lot of energy into protecting his mom. It could impede his social, emotional, and academic success for sure.

> . . .

> Q. And just to be clear, if [Tom] were ever exposed to [Herman], even just to see him, whether or not he was behaving in a violent manner towards his mother, would that be a traumatizing thing for him?

> A. It would be a very significant trigger for a traumatic reaction.

This testimony directly supports the finding disputed by respondent. We therefore reject her argument to the contrary.

In finding of fact number 8, the trial court found that Herman assaulted respondent in the presence of Tom on more than one occasion and that respondent's testimony to the contrary lacked credibility. Respondent appears to challenge the trial court's finding regarding her credibility. However, it is not our duty to re-weigh the credibility of the witnesses and substitute our judgment for that of the trial court. *See In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject."). We therefore reject respondent's argument.

In finding of fact number 9, respondent challenges the trial court's finding that she failed to demonstrate an understanding of the effects of domestic violence. She disputes this finding for a number of reasons: she completed domestic violence classes, entered into a safety plan, and has developed relationships in the community; she testified that she did not understand the implications of allowing Herman into her home and

that it would not happen again; that the finding was based on events that happened in the summer of 2012; and that DSS's evidence was speculative. We disagree. Several of respondent's arguments overlook the crux of the finding: that she failed to demonstrate an understanding of the effects of domestic violence *despite* having completed several components of her case plan.

Furthermore, after reviewing the record, we find the trial court's finding to be supported by the evidence. The evidence shows that Herman was physically abusive to respondent, and that Tom witnessed at least some of the domestic violence.[3] Respondent admitted that she allowed Herman in her home in the summer of 2012 on at least three occasions. Furthermore, respondent's foster mother testified that Herman was not respondent's first abusive relationship. Tom's father was also violent towards respondent. Respondent's therapist, Dawn Richard, testified that she was aware of both of respondent's abusive relationships. Although she and respondent discussed Herman, Richard found out that Herman was back in respondent's home only after Tom was removed from the trial placement.

---

[3] Respondent also asserts that the child protective services ("CPS") investigator's testimony on this matter is impermissible hearsay. Respondent, however, offers no argument or citation to legal authority in support of her assertion. We therefore decline to address this contention. *See* N.C.R. App. P. 28(6).

Richard testified that the incident concerned her "[b]ecause he wasn't supposed to be coming around because of the concern of having [Herman] around [respondent] due to the history of domestic violence and because of the concern of having [Tom] exposed to the domestic violence."

Richard confirmed that she discussed with respondent the effect of having Herman around Tom. Nonetheless, when asked if respondent understood the consequences, Richard testified as follows:

> Q. Do you feel that [respondent] ever really demonstrated to you a true understanding of the impact of having [Herman] around [Tom] would have on [Tom]? Did she -- did she really under -- did she ever get that? Do you feel like she got that?
>
> A. I don't think so. I think -- I think she wanted to at times, but I don't -- I don't think she really understood how that correlated.
>
> Q. And with respect to -- I know -- when was the last interaction you had or the last therapy you had with [respondent]?
>
> A. Late October of 2012.
>
> Q. And at that time would you say that there was still a risk of her potentially engaging in abusive relationships?
>
> A. Yes.

Additionally, Maureen Murphy, the DSS social worker assigned to respondent's case, testified that respondent had been making progress on her case plan but that she did not understand the impact of domestic violence on her children absent physical harm. We find the foregoing evidence sufficient to support the trial court's finding.

Respondent also challenges the trial court's conclusion of law in which it found neglect as a ground for termination. It is well-established that "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997) (citation omitted); *see also In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ("The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding*."). However, where the child is not in the custody of the parents at the time of the termination hearing, trial courts generally "employ a different kind of analysis to determine whether the evidence supports a finding of neglect." *In re Shermer*, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) (citation omitted). Because the determinative factor is the parent's

ability to care for the child at the time of the hearing, we previously have explained that "requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." *Id.*

Under such circumstances, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." *Ballard*, 311 N.C. at 713—14, 319 S.E.2d at 231. However, the prior adjudication, standing alone, does not support termination based on neglect. "The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." *Id.* at 715, 319 S.E.2d at 232 (citation omitted). Thus, a trial court may find either that neglect existed at the time of the hearing or "that grounds for termination exist upon a showing of a 'history of neglect by the parent and the probability of a repetition of neglect.'" *In re L.O.K.*, 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (citation omitted).

Respondent argues that the trial court failed to specify the time period in which Tom observed domestic violence between

his mother and Herman.[4] Therefore, respondent argues, it is unclear as to whether the trial court relied solely on the underlying adjudication of neglect instead of properly considering evidence of changed circumstances. We are not persuaded by respondent's argument. The trial court concluded that respondent "[has] neglected the children and that there is ongoing neglect and a likelihood of repetition of neglect[.]" Thus, the trial court's conclusion of law explicitly shows that it did not base its decision on the past adjudication of neglect. Furthermore, the findings of fact show that the likelihood of repetition was based on the events that happened after Tom's trial placement in the summer of 2012 — nearly a year after the adjudication. Lastly, we must again point out that respondent's argument overlooks the root of the trial court's conclusion. Respondent admitted that she allowed Herman into her home during Tom's trial placement, and that Tom witnessed domestic violence. Regardless of whether the domestic violence occurred in the summer of 2012 or prior to the children's removal, it is clear that Tom was exposed to domestic

---

[4] Respondent also raises this same argument in her challenges to the findings of fact. Because we are addressing it in connection with her challenge to the trial court's conclusion of law, we need not address it in connection with each of the challenged findings of fact.

violence and witnessed Herman abuse his mother. The findings also establish that Tom's exposure to Herman was emotionally damaging. Because respondent readily invited Herman into her home, the trial court was justified in concluding that a repetition of neglect was likely in the future. We therefore hold that the trial court's conclusion of neglect was supported by its findings of fact, and we affirm the trial court's order terminating respondent's parental rights.

Affirmed in part; dismissed in part.

Judges HUNTER, Robert C., and STEELMAN concur.

Report per Rule 30(e).