IN THE MATTER OF MICHELLE LEE GODWIN, MINOR

No. 767DC381

(Filed 6 October 1976)

Parent and Child § 1— termination of parental rights — serious neglect — refusal to consent to adoption — refusal of counseling

> The refusal of the natural parents of a child who has been in a foster home for some four years to consent to the adoption of the child by others and the refusal of the father, who suffers from a mental illness, to submit to further counseling to determine his ability as a parent do not constitute "serious neglect" within the meaning of G.S. 7A-288(4) which would permit the court to terminate the parental rights of the natural parents.

APPEAL by petitioner from *Carlton, Judge.* Order entered 4 February 1976 in District Court, NASH County. Heard in the Court of Appeals 16 September 1976.

On 5 November 1975 the Nash County Department of Social Services (petitioner) filed a petition pursuant to G.S. 7A-288(4) asking the court to terminate the parental rights of Cecil and Wanda Godwin as to their four-year-old daughter, Michelle, including their right to consent or object to the adoption of Michelle. At a hearing petitioner's evidence tended to show:

In 1972 Michelle, along with her two older sisters, was placed in the custody of the Nash County Department of Social Services upon an adjudication that they were neglected and dependent children. This adjudication was based primarily upon the father's mental illness and the mother's limited intellectual capacity. The father was diagnosed as a chronic paranoid schizophrenic, which illness will never be cured although medication can control some of the symptoms such as hallucinations

and illusions. The father has been admitted to Cherry Hospital on four occasions and in the opinion of psychiatrists his chances for holding normal employment are minimal. The father is likely to require future hospitalization although he has refused for the last year to return to the mental health center for further counseling. His ability as a parent is below normal due to his inability to think through relationships and his inflexibility with people. The mother has a third grade education and has spent ten years at the Caswell Center. Following this adjudication, Michelle was placed in a foster home when she was 18 months old. At the time she was placed in foster care, she was "below normal" but now is above normal in every respect and is very outgoing. Michelle has no emotional ties with her parents and, in fact, regards her foster mother as her real mother. In October 1974, it was determined that the monthly visits of Michelle with her parents were doing more harm than good because of the confusion that was created. The two older children, who have developed emotional ties with their parents, have continued their visits and petitioner is not seeking to terminate parental rights as to them; in fact, the social workers have told the parents that the two older children *may* be returned to them depending on future evaluations. No caseworker has ever seen the parents physicially abuse their children nor has any caseworker ever seen any intentional neglect on their part. The parents have consistently refused to sign a voluntary consent for Michelle to be adopted by other parties.

Respondents' evidence tended to show: In 1972 the father suffered a "nervous breakdown" from the pressures of his job. Since that time he has made regular visits to the mental health clinic from which he has received medication and he believes he is greatly improved. The father has not refused to be reevaluated but is merely waiting for the social worker to make an appointment. In addition to the disability benefits and social security that the family receives, the mother has been earning money regularly by babysitting for the two-year-old child of a friend. The parents love their children and would like to be normal parents once again. They have refused to consent to the termination of parental rights and subsequent adoption of Michelle even if it means she will remain in a foster home because they are not willing "to give away [their] flesh and blood."

In re Godwin

From a denial of the petition to terminate parental rights, petitioner appealed.

*George Paul Duffy, Jr., for the petitioner appellant.*

*Ezzell, Henson & Fuerst, by James E. Ezzell, Jr., for respondent appellees.*

BRITT, Judge.

The sole question presented on appeal is whether the trial court erred in concluding that there had been no "physical abuse or serious neglect" as required to terminate parental rights under G.S. 7A-288(4). We hold that it did not.

The statutory provision applicable to the present case is G.S. 7A-288(4) which provides that the court may enter an order terminating parental rights if the court finds: "That the parent has so physically abused or seriously neglected the child that it would be in the best interest of the child that he not be returned to such parent." As stated in *Dept. of Social Services v. Roberts,* 22 N.C. App. 658, 660, 207 S.E. 2d 368, 370 (1974): "It should be noted that the court is not required to terminate parental rights under any circumstances. G.S. 7A-288 only gives the court the authority to do so in the exercise of its discretion. . . . "

To terminate parental rights under the present statutory provision, the trial court must base its determination on evidence which shows either physical abuse or serious neglect. No evidence of physical abuse was presented in the instant case. Petitioner contends that the refusal of the Godwins to consent to the adoption of Michelle (by other parties) and the refusal of the father to submit to further counseling to determine his ability as a parent constitute serious neglect. We agree with the trial court that this is not the type of "serious neglect" contemplated by the statute.

The evidence presented was insufficient to support a finding of serious neglect, therefore, the decision of the trial court is

Affirmed.

Judges PARKER and CLARK concur.