IN RE: TYSON A MINOR CHILD (BRENDA CAROLYN TYSON)

No. 8410DC910

(Filed 3 September 1985)

1. **Parent and Child § 1.6— termination of parental rights—sufficiency of findings**

     There were sufficient grounds to terminate a father's parental rights where the trial court made numerous findings supported by substantial evidence that the father had never established paternity, legitimated the child, or provided substantial support or care for the child or her mother; however, the court's findings were inadequate to support its conclusion that grounds existed authorizing termination of the mother's rights under G.S. 7A-289.32(2), (3), or (4) (1981 and Supp. 1983) where the prior adjudication of neglect was entered in 1970 at a hearing of which the mother did not have notice and in which she neither appeared nor was represented by counsel; there was no evidence that the child did not receive proper care, supervision or discipline from the mother during visits while the child was in DSS custody; the child was relinquished by her grandmother at a time when the grandmother was the primary care giver for the child and the mother was unable to care for the child or give her support; and the court found that the mother responded positively to DSS efforts to improve the parent-child relationship, had made improvements, and there was no reasonable portion of the cost of care for the child which the mother could be expected to pay. G.S. 7A-39.32(6) (1981).

2. **Parent and Child § 1— termination of parental rights—court's discretion to refuse to terminate**

     The trial court did not abuse its discretion by declining to terminate parental rights where the factual findings were insufficient to support a conclusion that grounds existed for terminating the mother's parental rights and the court declined to terminate the father's parental rights, even though grounds existed to terminate his rights. G.S. 7A-289.31(b) (1981).

APPEAL by petitioner and guardian *ad litem* from *Bason, Judge.* Orders entered 5 March 1984 in District Court, WAKE County. Heard in the Court of Appeals 16 April 1985.

*Parker, Sink, Powers, Sink & Powers, by Charles F. Powers, III, for petitioner appellant Wake County Department of Social Services.*

*Overby & McKee, by Donald W. Overby, for guardian ad litem appellant Nell Allen.*

*A. Larkin Kirkman, for respondent appellee Brenda Tyson Covington.*

*Thomas W. Jordan, Jr., for respondent appellee Genatis Lane.*

BECTON, Judge.

I

Petitioner, Wake County Department of Social Services (DSS) filed a petition on 14 July 1982 to terminate the parental rights of respondents, Brenda Tyson Covington (sometimes "respondent mother" or "Ms. Covington") and Genatis Lane (sometimes "respondent father" or "Mr. Lane"), in their minor daughter Brenda Carolyn Tyson (sometimes "Carolyn" or "[minor] child"). The case was heard in May 1983, and a separate order was entered as to each parent on 5 March 1984. In these orders, although the trial court concluded that conditions existed authorizing the termination of parental rights as to both parents, it further concluded that it was not in the best interests of the minor child for the parental rights of Ms. Covington and Mr. Lane to be terminated. The petition was dismissed as to Ms. Covington. Although Mr. Lane's parental rights were likewise not terminated, the petition as to him was not dismissed. The DSS and the guardian *ad litem* (sometimes "appellants") appeal, and respondent parents cross-assign error.

The appellants contend that the trial court abused its discretion in concluding that it was not in the best interest of the minor child that respondents' parental rights be terminated once it had determined that grounds authorizing termination existed. Through their cross-assignment of error, the respondent parents contend that the evidence and findings do not support the court's conclusion that conditions authorizing the termination of parental rights have been shown to exist. In the event this Court finds that such conditions exist, the respondents maintain it was a

proper exercise of the trial court's discretion to decline to terminate parental rights.

We conclude that: the order as to Ms. Covington does not support the conclusion that grounds exist authorizing the termination of her parental rights; thus, the discretionary determination by the court that her parental rights not be terminated constitutes harmless error. As to Mr. Lane, the order correctly concludes that grounds exist to authorize termination of his parental rights; however, it was not an abuse of discretion to decline to terminate his parental rights. Therefore, other than modifying the order as to Mr. Lane to correct a technical defect, the orders appealed from are affirmed.

II

Factual Background

Brenda Carolyn Tyson was born on 16 February 1968. Her parents, Brenda Tyson Covington and Genatis Lane, have never married each other. Carolyn was originally placed in DSS custody by order dated 9 January 1970, in which it was found that the child was "in effect, abandoned by her mother" and that she was a neglected child. At the time Carolyn came into DSS custody, she was living with her maternal grandmother, Lola Tyson. Since January 1970, Carolyn has remained in DSS custody, and since July 1970 she has lived in the foster home of Elvis and Zolleen Morgan. At the time of the hearing on the instant petition, Carolyn was 15 years old.

The Morgans and three social workers assigned to Carolyn's case testified for petitioner DSS. Both Elvis and Zolleen Morgan testified that they love Carolyn and want to adopt her. Mrs. Morgan also testified she would have no objection to Carolyn visiting her natural mother after adoption.

Jo Parker was assigned to Carolyn's case from January 1974 to May 1979. She testified that during that period, Carolyn was happy and well-adjusted in the Morgan home, and that she visited sporadically with her natural parents and maternal grandmother. She testified that although the Morgans expressed an interest in adopting Carolyn, her natural parents, particularly Ms. Covington, refused to put her up for adoption. During this period, Ms.

Covington's three children born of her marriage to Lawrence Covington, were also placed in DSS custody.

Susan Shields testified that she was the caseworker from September 1979 to November 1980, that no visitations between Carolyn and her natural parents occurred during that period, and that during Shields' frequent contacts with Ms. Covington, Ms. Covington did not mention Carolyn, but only expressed concern about two of her other children.

Paige Robinson was the social worker next assigned the case in November 1980, and was still working on the case at the time of the hearing. Ms. Robinson testified that during this time sporadic visitation has continued; that Ms. Covington has been offered assistance in numerous ways by the DSS, but has not progressed to the point where she is capable of taking care of Carolyn.

She testified that Ms. Covington is extremely concerned about seeking employment; that sometimes Ms. Covington requested visits with Carolyn that were refused; that although Ms. Covington can be very difficult to work with, she responds to specific suggestions involving her children; that although Ms. Covington is willing to have Carolyn remain with the Morgans, she continues to resist any suggestion that the Morgans be allowed to adopt Carolyn.

According to Ms. Robinson, Mr. Lane has paid no child support while she has worked on the case, and has never established paternity. She testified that the decision to alter the *status quo* of long-term foster care and to seek termination of parental rights was reached for two reasons: (1) a permanent placement was desirable, and (2) Carolyn wanted to be "an adopted child who belongs to a family." She testified that even if parental rights were not terminated, the foster care plan would not be disturbed.

The guardian *ad litem* presented the testimony of herself and of Carolyn Tyson. The guardian *ad litem* testified that she thought it was in Carolyn's best interest that parental rights be terminated. Carolyn testified that she loves the Morgans as though they were her real parents and wants to be adopted by them. She also testified that, if adopted, she would still like to visit with her mother.

The respondent parents presented the testimony of Mr. Lane, Ms. Covington, and Ms. Covington's mother, Lola Tyson. Mr. Lane testified that he is Carolyn Tyson's father, that he has never "signed papers" to legitimate Carolyn, that although he paid about $10.00 a week in child support when the DSS first got custody, he has not paid any support in the past ten years. He testified that for the past three years he has worked at Cross Poultry, earning about $55-$60 per week. Lola Tyson testified that she loves Carolyn, that Ms. Covington loves Carolyn, and that she has never seen Ms. Covington act to harm Carolyn. Brenda Covington testified that she loves her daughter and wants Carolyn to live with her, but that she cannot currently provide a home for her. She testified that nobody ever told her she needed to pay child support for Carolyn. She testified that she currently works part-time cleaning apartments, earning up to $150 per month, and that she is trying to get a job.

### III

We first address the question as to whether grounds existed to authorize the termination of parental rights.

[1] The DSS sought to terminate the parental rights of the mother under N.C. Gen. Stat. Sec. 7A-289.32(2), (3), and (4) (1981 and Supp. 1983); and of the father, under those same subsections and also under N.C. Gen. Stat. Sec. 7A-289.32(6) (1981). In neither order did the trial court specify the subsection or subsections upon which a termination of parental rights would be authorized. However, it is well-settled that an adjudication of the existence of only one of the statutorily enumerated grounds will enable the court to terminate parental rights. *In re Johnson*, 70 N.C. App. 383, 320 S.E. 2d 301 (1984).

Before the trial court may exercise its discretion whether to terminate parental rights, it is required to "take evidence, find the facts, and . . . adjudicate the existence or nonexistence of any of the circumstances set forth in G.S. 7A-289.32 which authorize the termination of parental rights. . . ." N.C. Gen. Stat. Sec. 7A-289.30(d) (1981). The factual findings must be based on "clear, cogent, and convincing evidence." N.C. Gen. Stat. Sec. 7A-289.30(e) (1981). Such properly supported findings are binding on appeal even though there may be evidence to the contrary. *In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984). Furthermore, find-

---

---

ings of fact not excepted to are deemed supported by competent evidence and are conclusive on appeal. *In re Smith*, 56 N.C. App. 142, 287 S.E. 2d 440, *cert. denied*, 306 N.C. 385, 294 S.E. 2d 212 (1982).

Applying these rules to the case *sub judice*, we conclude that the order as to Mr. Lane contained ample factual findings supporting the trial court's conclusion that grounds existed authorizing the termination of his parental rights. By way of example, the trial court made numerous unexcepted-to findings, all supported by substantial evidence, that Mr. Lane has never established paternity, legitimated the child, or provided substantial support or care for Ms. Covington and Carolyn, thus authorizing termination of his parental rights under G.S. Sec. 7A-289.32(6) (1981).

As to Ms. Covington, however, although we have carefully reviewed the 65 findings of fact made by the trial court, we find them inadequate to support the court's conclusion that grounds authorizing termination of parental rights existed under G.S. Sec. 7A-289.32(2), (3), or (4) (1981 and Supp. 1983), the grounds upon which the DSS sought termination. (The other statutory grounds have either been repealed or are clearly inapplicable here.)

G.S. 7A-289.32(2) (1981 and Supp. 1983) permits a termination of parental rights upon, *inter alia*, a finding of neglect. The trial court found, without exception, that Carolyn had been adjudicated neglected in 1970, that the prior order had been entered at a hearing of which the mother did not have notice and in which she neither appeared nor was represented by counsel, and that the prior adjudication was based on acts "remote in time" from the instant hearing. The trial court further found, also without exception, that during visits between Ms. Covington and Carolyn while Carolyn was in DSS custody, there was no convincing evidence that Carolyn did not receive proper care, supervision, or discipline from her mother.

Our Supreme Court held in *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984), that

> a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights. . . . [However,] [t]he trial court must also consider any evidence of changed conditions in

light of the evidence of prior neglect and the probability of a repetition of neglect.

*Id.* at 714, 715, 319 S.E. 2d at 231, 232. The Court also observed that prior adjudication alone is unlikely to sufficiently support termination of parental rights, when parents have been deprived of custody for a significant period of time. Based on the discussion in *Ballard*, the order *sub judice*, containing findings that an *ex parte* adjudication of neglect had been entered thirteen years earlier, and that the petitioner has failed to present "clear, cogent, and convincing evidence" of neglect since that time, does not support termination pursuant to G.S. Sec. 7A-289.32 (2) (1981 and Supp. 1983).

Nor does the order support termination under G.S. Sec. 7A-289.32(3) (Supp. 1983), which authorizes termination when:

> [t]he parent has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made within two years in correcting those conditions which led to the removal of the child or without showing positive response within two years to the diligent efforts of a county Department of Social Services, a child-caring institution or licensed child-placing agency to encourage the parent to strengthen the parental relationship to the child or to make and follow through with constructive planning for the future of the child.

The trial court found that although no clear, cogent, and convincing evidence showed the conditions leading to the child's removal, there was an indication that the child was relinquished by her maternal grandmother at a time when the grandmother was the primary care giver for the child and the mother was unable to care for Carolyn or contribute to her support. The court further found that:

> 19. Both the establishment of stable housing in an environment free from discord with her former spouse and the establishment of regular and frequent contacts with the Petitioner, in a posture that allows the regular monitored visits with her other children indicates to the court substantial progress over that set of circumstances which has existed at previous periods during the Petitioner's custody of the child.

. . .

31. The mother's response to Mrs. Robinson's efforts to encourage strengthening of the parent-child relationship was positive.

Although the evidence would, in our opinion, support contrary findings, we cannot say that the trial court's findings are not supported by competent evidence.

Finally, a finding that a parent has ability to pay support is essential to termination for nonsupport under G.S. Sec. 7A-289.32 (4) (1981). *In re Ballard.* The trial court found without exception that "[b]ased upon the mother's income there is no reasonable portion of the cost of care for the child which she could be expected to pay." Thus, termination could not be accomplished under G.S. Sec. 7A-289.32(4) (1981).

IV

[2] We next consider whether the trial court committed reversible error in concluding that it was in the best interest of the child that parental rights not be terminated after concluding that grounds existed authorizing such termination.

As stated by our Supreme Court in *In re Montgomery,*

N.C. Gen. Stat. Sec. 7A-289.31(a) and (b), which governs the disposition stage of a termination proceeding, provide that the trial court may elect not to terminate parental rights if the best interests of the child require such a result:

(a) Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.

(b) Should the court conclude that irrespective of the existence of one or more circumstances authorizing termination of parental rights, the best interests of the child require that such rights should not be terminated, the court shall dismiss the petition, but only after set-

ting forth the facts and conclusions upon which such dismissal is based.

311 N.C. at 107-8, 316 S.E. 2d at 251 (emphasis omitted). This Court has consistently held that upon a finding that grounds exist to authorize termination, the trial court is never required to terminate parental rights under any circumstances, but is merely given the discretion to do so. *E.g., In re Pierce*, 67 N.C. App. 257, 312 S.E. 2d 900 (1984); *In re Godwin*, 31 N.C. App. 137, 228 S.E. 2d 521 (1976).

As to respondent mother, Ms. Covington, we have already shown how the factual findings were insufficient to support the trial court's conclusion that grounds existed authorizing termination of parental rights. Thus, although the trial judge did not need to reach the issue of whether respondent mother's parental rights should be terminated, because he declined to terminate them, any error inhering from his exercise of discretion was obviously harmless.

As to respondent father, Mr. Lane, after correctly concluding that grounds existed to terminate his parental rights, the trial court further concluded that

[d]ue to the fact that the parental rights of the mother are not to be terminated, there is no logical reason to terminate the parental rights of the father Genatis Lane; and the court concludes that it is not in the best interests of the minor child that the parental rights of Genatis Lane be terminated.

The trial court then ordered that respondent father's parental rights not be terminated. In our opinion, it was not an abuse of discretion by the trial judge to decline to terminate Mr. Lane's parental rights. We do note, however, that the court neglected to dismiss the petition as to Mr. Lane once it determined his parental rights should not be terminated, pursuant to N.C. Gen. Stat. Sec. 7A-289.31(b) (1981). The order is therefore modified to reflect such dismissal. The trial court might amend its order in order that it indicate the petition as to respondent father is dismissed.

## V

In conclusion: the order as to respondent Brenda Tyson Covington is

Affirmed.

The order as to Genatis Lane is

Modified and affirmed.

Judges WEBB and PARKER concur.