IN THE MATTER OF C.E.J., Jr.
No. COA08-1289
Court of Appeals of North Carolina
Filed March 17, 2009
This case not for publication
Elizabeth Myrick Boone, for petitioner-appellee Pitt County Department of Social Services.
Susan P. Dion, for guardian ad litem.
Sofie W. Hosford, for respondent-appellant father.
CALABRIA, Judge.
Respondent-father C.E.J., Sr. ("respondent") appeals from the order of the trial court terminating his parental rights as father of the minor child C.E.J. ("the child"), born in 1997.[1] Respondent contends the trial court erred in finding grounds for termination based on neglect, abandonment, and wilfully leaving the child in foster care for more than twelve months without making reasonable progress to correct the conditions which led to the removal of the child. Respondent further challenges the trial court's determination that termination is in the best interests of thechild. For the following reasons, we affirm the order of the trial court.

Background
C.E.J. is a child with special needs who has been diagnosed with ADHD, hyperactive-impulsiveness, major depression, mixed receptive-expressive language, and problems with school achievement. Pitt County Department of Social Services ("DSS") first became involved with this child in 1997 when he was removed from his mother's care and adjudicated neglected and dependent. The child was returned to his mother in February of 1999, but she later left him in respondent's care for about a year to a year and a half. In 2000, respondent was incarcerated and he left the child with a family friend, Valerie Choates. The child's mother removed him from Ms. Choates' home until allegations of neglect were substantiated, and then she voluntarily placed the child back with Ms. Choates.
In June of 2003, DSS took custody of the child and placed him in foster care. He has been in the same foster home since 9 June 2003. Respondent was released from prison on 4 July 2003, and visited with the child in the fall of that year. The child was adjudicated neglected and dependent a second time on 13 August 2003. In the adjudication order, the trial court ordered respondent to submit to random drug screens, obtain employment, maintain stable housing, and pay child support to DSS.
At a review hearing held on 4 December 2003, the trial court found that respondent had not obtained stable housing oremployment, although he had been visiting with the child. A permanency planning review hearing was held on 15 July 2004. The trial court noted that respondent last visited with the child in November 2003, his visitation with the child was inconsistent, he had not provided DSS with verification of stable housing or steady employment, and criminal charges were then pending against him. The trial court determined that the permanent plan for the child was adoption and relieved DSS of reunification efforts.
At the review hearing held on 14 October 2004, the trial court noted that respondent was rumored to be living in Florida. At the 1 September 2005 permanency planning review hearing, the trial court found that respondent was then incarcerated, but he opposed termination of his parental rights. The court reiterated the requirements that respondent obtain and maintain stable housing and employment, submit to random drug screens, and pay child support to DSS. The next permanency planning review hearing was held on 3 August 2006. The court found that DSS had not heard from respondent, but he was believed to be living in Florida. The court stated the permanent plan for the child was custody or guardianship with an approved caretaker. No change was made to the plan at review hearings held on 30 November 2006 and 8 February 2007. The trial court changed the permanent plan to one of adoption with a concurrent plan of guardianship at the 11 July 2007 permanency planning review hearing when the foster mother indicated her desire to adopt the juvenile. At a permanency planning review hearingheld on 1 November 2007, the trial court ordered DSS to proceed with termination proceedings.
On 6 November 2007, DSS filed a petition to terminate parental rights and alleged as grounds with respect to respondent: (1) neglect, N.C. Gen. Stat. § 7B-1111(a)(1); (2) wilfully leaving the minor child in foster care for more than twelve months without making reasonable progress under the circumstances to correct the conditions which led to the removal of the child from the home, N.C. Gen. Stat. § 7B-1111(a)(2); (3) wilful failure to pay a reasonable cost of the care for the juvenile, N.C. Gen. Stat. § 7B-1111(a)(3); and (4) abandonment, N.C. Gen. Stat. § 7B-1111(a)(7). Respondent challenged the petition by filing a response on 7 February 2008, and an answer on 11 February 2008 in which he denied the material allegations.
Respondent's deposition was taken over the telephone from Florida on 1 April 2008. Respondent stated he was currently incarcerated at a facility in Florida, but he expected to be released in April 2009. He hoped to regain custody of the child after his release, but he intended to stay in Florida, since his employment and housing remained in Florida. Upon release from prison, he expected to be employed as a welder, and initially to live at Tabard House Ministries, an organization that aids recently released prisoners with finding jobs, housing, and benefits. Respondent stated his intent to save money and obtain his own housing by the middle of 2009 or early 2010. Respondent further testified he moved to Florida in 2004 in order to obtain employment, despite knowing the child was living in foster care. He worked as a roofer until he was incarcerated in July 2005. Respondent stated he had not been asked to submit to random drug screens, but he was enrolled in a parenting class that he expected to finish. He had previously completed a substance abuse treatment program at a different correctional facility. Respondent stated that he had not seen the child since 2004, but that he had called social worker Vivian Cheek a few times before his incarceration in 2005 to learn about the child's progress. He also stated that he had sent two Christmas gifts to the child. Once respondent received the petition for termination of parental rights from DSS, he sent six or seven letters to the child through DSS. He acknowledged that he had not paid any child support. When he was asked if he earned any money he stated he earned $4.82 per week while incarcerated, but he spent the money on cigarettes and necessary toiletries. He admitted that he did not have a bond with his son.
The termination hearing was held on 26 June 2008. Testimony was taken from Janine Fox, who handled this case as a social worker with DSS between June 2006 and May 2008. Ms. Fox testified about her knowledge of the case, beginning with the history of the case up to 2003. She testified that respondent had not spoken with the child since 2003 and that his last visitation with the child was in November 2003, but after he was served with the termination petition in late 2007 he contacted DSS and asked aboutcommunicating with the child. Thereafter, he sent six or seven letters and a birthday card. During the time Ms. Fox was the social worker for the case, she did not receive any gifts for the child from respondent. Respondent did not have any contact with DSS until after he received the petition. Ms. Fox testified that respondent did not have stable housing or employment when he was not incarcerated. She noted that respondent had been incarcerated several times during the pendency of the case. She also pointed out that respondent was released from prison in Florida in July 2007, but he committed another crime and was sentenced in October 2007. He never contacted the child after he was released from prison. Ms. Fox stated respondent never indicated an intent to return to North Carolina to be with the child, nor could he demonstrate any support network in North Carolina to aid him in raising the child.
After considering all the evidence presented at adjudication, including respondent's deposition and the court file, the trial court found that clear, cogent, and convincing evidence was presented to support termination of respondent's parental rights for neglect, wilful failure to make reasonable progress, and abandonment.
At the disposition phase of the hearing, DSS social worker Faith Williams testified that the child was placed in his current foster home in June of 2003, and that he was now eleven years old. She testified that the child wants to be adopted by his foster parent, who wants to adopt the child. Ms. Williams observed thechild with his foster family and stated "they seem to interact well," that the child listens to his foster mother and follows her instructions. He appeared to be well-adjusted and happy. When Ms. Williams talked with the child about letters from his father, the child stated he was "[n]ot at all excited" about his father.
Foster mother Marie Brown testified that she had a good relationship with the child, that she wants to adopt him, and that the child indicated he wanted to be adopted by her and he did not want to live anywhere else. She also stated the child gets very upset when discussing respondent-father and he denies that respondent is his father. Ms. Brown also mentioned that other members of her family see the child frequently, and that he gets along well with the other family members living in her home.
The trial court determined that termination of respondent's parental rights is in the best interests of the child and ordered that his rights be terminated. The findings and conclusions were set forth in the court's order entered 1 August 2008. From the order entered, respondent appeals and challenges each of the grounds for termination as being unsupported by evidence, as well as the determination that termination is in the best interests of the child.

Standard of Review
Proceedings to terminate parental rights are conducted in two parts: (1) the adjudication phase, governed by N.C. Gen. Stat. § 7B-1109, and (2) the disposition phase, governed by N.C. Gen. Stat. § 7B-1110 (2007). In re Blackburn, 142 N.C. App. 607, 610, 543S.E.2d 906, 908 (2001). Upon review of an order terminating parental rights, this Court must determine (1) whether the trial court's findings of fact are supported by clear, cogent and convincing evidence, and (2) whether the court's findings of fact support its conclusions of law that one or more statutory grounds for termination exist. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001); see also N.C. Gen. Stat. § 7B-1111(a). Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary. See In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988). Once a trial court has determined at the adjudication phase that at least one ground for termination exists, the case moves to the disposition phase where the trial court decides whether a termination of parental rights is in the best interest of the child. Blackburn, 142 N.C. App. at 610, 543 S.E.2d at 908; N.C. Gen. Stat. § 7B-1110(a). The trial court is not required to terminate parental rights, but has the discretion to do so. In re Tyson, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985). This Court therefore reviews the determination for abuse of discretion. Id.
Termination of Parental Rights:
Adjudication Phase
A trial court may terminate parental rights upon finding that a parent has neglected the child. N.C. Gen. Stat. § 7B-1111(a)(1) (2007). A child is neglected if he or she does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007). In determining neglect, the court must consider "the fitness of the parent to care for the child at the time of the termination proceeding." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (emphasis in original). Although evidence of past neglect is admissible, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. This is especially true where the parent has not had custody of the child for quite some time. Id. at 714, 319 S.E.2d at 231.
Although the prior adjudications in this case established the existence of past neglect, DSS had the burden to show that a reasonable probability existed that neglect would most likely be repeated if the child were returned to respondent's care. The trial court found the following facts that tend to support its conclusion that respondent neglected the child and that such neglect will likely be repeated in the future:
46. That during the time that Ms. Janine Fox was employed at Pitt County DSS and assigned to this matter, from June 2006-May 2008, Respondent Father never had stable housing or employment.
47. That pursuant to prior orders of the court, the Respondent Father indicated that hedid not want his parental rights terminated, but that he never told the Department that he wanted custody of the juvenile.
48. Nor does Respondent Father have an adequate support network for raising this special needs juvenile who requires extra attention and support.
49. Respondent Father has continued to be in and out of the court system and prison.
50. Respondent Father has not provided proper care, concern, or support for the juvenile.
51. That in August 2003, the Respondent Father was ordered to provide stable housing, complete drug screens, and provide support, but he has failed to do so.
. . .
61. That since 2004, when the Respondent Father visited with the juvenile, there was no further communication by him until January 2008.
. . .
81. That the Respondent Father, by his own admission, indicated that the last time he had seen the juvenile was in 2004.
. . .
88. The Court has considered all of the evidence of changed conditions of Respondent Father and the efforts that Respondent Father made after the Petition for Termination of Parental Rights was filed, however these recent efforts do not outweigh the evidence of persistent, willful neglect by Respondent Father up until January of 2008 and the probability of continued neglect thereafter.
89. The Court is convinced that there is a high probability of repetition of neglect of the juvenile by Respondent Father because Respondent Father does not have the means or ability to adequately provide for the special needs of this juvenile now or upon his release from prison.
Our review of the record reveals each of these findings are based on substantial evidence and includes prior orders entered in the case, respondent's deposition, and testimony from social workerJanine Fox. Although respondent argues that his incarceration alone is not enough to provide the basis for termination based on neglect, we note that there were periods of time when he was not incarcerated that he failed to maintain any contact with either the child or DSS, or otherwise participate in the child's life. He admitted that he knew his son was in foster care when he moved to Florida in 2004, yet he neither made contact nor sent correspondence to his son until after receiving the termination petition from DSS in late 2007. "Neglect is more than a parent's `failure to provide physical necessities' and can include the total failure to provide love, support, affection and personal contact." In re D.J.D., 171 N.C. App. 230, 240, 615 S.E.2d 26, 33 (2005) (citing In re Ore, 160 N.C. App. 586, 589, 586 S.E.2d 486, 488 (2003)). He points out that he expects to be released in April 2009, and he has attempted to remain involved in his son's life by taking parenting classes and communicating with his son. These minimal efforts were considered by the trial court. However, respondent's own testimony indicated that he had last seen the child in 2004 and that he did not have any bond with his child. The trial court properly considered respondent's history of crime and complete lack of communication in determining that future neglect would likely continue. The evidence supports the findings found by the trial court, the findings support the conclusion that grounds exist to terminate parental rights based on neglect, and respondent's assignments of error on this issue are therefore overruled. Because we find the trial court properly based termination on neglect, we need not address respondent's further arguments regarding the remaining grounds of abandonment and failure to make reasonable progress while leaving the child in foster care for more than twelve months. N.C. Gen. Stat. § 7B-1111(a); In re Shermer, 156 N.C. App. 281, 285, 576 S.E.2d 403, 406 (2003).

Disposition Phase
Respondent also challenges the trial court's determination in the disposition phase of the hearing that termination of his rights is in the best interest of the child. He argues that the trial court erred because he expressed an interest in remaining a part of the child's life, that termination was not required, and that guardianship would have provided permanency while still allowing respondent to maintain a relationship with the child. We do not find these arguments persuasive.
In making the decision whether termination is in the best interest of the child, the trial court must consider the following factors:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement. (6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110(a)(1)-(6) (2007). At the disposition phase, the trial court made several findings of fact as the basis for its conclusion that termination of respondent's parental rights is in the best interest of the child, including: (1) the child was eleven years old at the time of the hearing; (2) the likelihood of adoption of the child is great in that the child desires to be adopted by his foster parents, who in turn wish to adopt him; (3) termination of respondent's parental rights will aid in the accomplishment of the permanent plan for the child, which is adoption; (4) the bond between the child and respondent is non-existent; (5) the quality of the relationship between the child and his foster parents is very good; (6) the child has bonded with his foster parents' extended family; (7) the child's behaviors and school performance have improved significantly; and (8) the child's psychological care is located in Pitt County. Based on these findings, the trial court determined that the best interests of the child would be served by terminating respondent's parental rights.

Conclusion
We find the foregoing facts address each of the factors listed in N.C. Gen. Stat. § 7B-1110 and are supported by evidence presented at the hearing. We also find the findings of fact fully support the trial court's conclusion that termination of respondent's parental rights is in the best interest of the child. The trial court therefore did not abuse its discretion indetermining that termination is in the best interest of the child. Accordingly, the trial court's decision to terminate parental rights is affirmed.
Affirmed.
Judges HUNTER, Robert C. and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] C.E.J.'s mother, R.L.W., relinquished her parental rights on 29 January 2008 and is not a party to this appeal.