IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-285

No. COA21-633

Filed 3 May 2022

Granville County, No. 20 JT 36

IN THE MATTER OF:

S.R.

Appeal by petitioner from Order entered 8 June 2021 by Judge Caroline S. Burnette in Granville County District Court. Heard in the Court of Appeals 8 March 2022.

*Edward Eldred for petitioner-appellant.*

*Lisa Anne Wagner for respondent-appellee.*

GORE, Judge.

¶ 1 Petitioner Tiffany Roberto, Sarah's[1] mother, appeals from an order entered declining to terminate respondent Bruce Savard's, Sarah's father, parental rights. We affirm.

## I. Background

¶ 2 Ms. Roberto and Mr. Savard were married and during that marriage they had a child, Sarah, who was born on 23 April 2014. The day before Sarah was born, an incident occurred between Ms. Roberto and Mr. Savard. During this incident, Mr.

---

[1] A pseudonym is used to protect the identity of the juvenile.

Savard was holding a gun and threatened to kill himself. Ms. Roberto called a friend, Joe Roberto, who arrived at her and Mr. Savard's home, talked to Mr. Savard, and eventually was able to take the firearm away from Mr. Savard. After Joe Roberto arrived, Mr. Savard went inside the home and laid down on the couch.

¶ 3        Shortly after Sarah's birth, in June 2014, Ms. Roberto sought out and received an *ex parte* domestic violence protective order ("DVPO") against Mr. Savard. Following the entry of the DVPO Mr. Savard and Ms. Roberto separated. Mr. Savard, who was an active duty member of the United States Marines at the time, went back to living on the military base. Ms. Roberto moved out of the home she shared with Mr. Savard and moved into a spare room in Joe Roberto's home. Ms. Roberto and Mr. Savard were divorced on 8 June 2016. Ms. Roberto and Joe Roberto were married on 22 November 2016.

¶ 4        Following the entry of the DVPO in 2014, Ms. Roberto petitioned for child support and medical insurance coverage. An Order was entered requiring Mr. Savard to pay child support and provide medical insurance for Sarah. Mr. Savard left military service approximately one month after the Order requiring he pay child support was entered. In the time immediately following his service in the military Mr. Savard attended trade school. During his time in school Mr. Savard was unable to pay child support. However, once he became gainfully employed Mr. Savard began paying child support through garnishment from his wages. Sometime around the end

of 2018, Ms. Roberto moved to have child support payments removed from North Carolina Centralized Collections and require Mr. Savard to pay child support upon his own volition. Once Mr. Savard no longer had the ability to provide child support through garnishment of his wages child support payments stopped.

¶ 5 On 13 October 2017, Mr. Savard filed a Motion seeking to amend child custody, child support, and seeking temporary visitation. As a part of that proceeding, Mr. Savard did not timely respond to Ms. Roberto's request for discovery. As a result, the trial court in that matter dismissed Mr. Savard's Motion.

¶ 6 On 22 June 2020, Ms. Roberto petitioned to terminate Mr. Savard's parental rights. Ms. Roberto alleged that grounds exist to terminate Mr. Savard's parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1), (4), and (7) for neglect of the juvenile, failure to pay child support, and willful abandonment of the juvenile. Mr. Savard filed his Answer to Ms. Roberto's Petition on 10 September 2020. The matter was heard before the trial court on 28 January 2021 and 18 March 2021. Following the hearing, in an Order entered 8 June 2021, the trial court denied Ms. Roberto's Petition, concluding grounds did not exist to terminate Mr. Savard's parental rights. Ms. Roberto entered timely Notice of Appeal on 7 July 2021.

## II.    Standard of Review

¶ 7 A termination of parental rights proceeding involves two separate analytical phases: an adjudication stage and a dispositional stage. *In re Blackburn*, 142 N.C.

App. 607, 610, 543 S.E.2d 906, 908 (2001). A different standard of review applies to each phase. The present case did not proceed past the adjudication stage, thus, our discussion only regards the adjudication stage.

¶ 8 "At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). "The standard for review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent, and convincing evidence and whether these findings, in turn, support the conclusions of law." *In re Clark*, 72 N.C. App. 118, 124, 323 S.E.2d 754, 758 (1984).

### III.    Termination of Parental Rights

¶ 9 On appeal, Ms. Roberto argues that (1) certain findings of fact are not supported by clear, cogent, and convincing evidence and (2) that the conclusion of law that no grounds for termination of parental rights exist is not supported by the findings of fact. We address these arguments in turn.

**A. Findings of Fact**

¶ 10 In her argument on appeal, Ms. Roberto argues that findings of fact 12, 13, 15, 25, 27, 29, 30, and 36 are not supported by clear, cogent, and convincing evidence.

¶ 11 "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support

a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379, 831 S.E.2d 305, 310 (2019). "It is the trial court's duty, however, to consider the evidence and pass upon the credibility of the witnesses and this Court will not reweigh the evidence." *In re L.H.*, 378 N.C. 625, 636, 2021-NCSC-110, ¶ 16 (internal citation omitted).

We discuss each challenged finding in turn (the specific portions of each finding which are challenged are noted in italics).

### 1. *Finding of Fact 12*

Finding of fact 12 states:

> The day before [Sarah] was born, Mr. Savard had a mental health break and threatened to kill himself. Ms. Roberto immediately called Joe who arrived at the home. When he arrived at the home, Ms. Roberto jumped into his car. Mr. Savard was in the front doorway with a gun in his hand. *He was not threatening or combative.* Joe got him into the house, took the gun and found the shotgun he bought Mr. Savard as a Christmas present and removed them from the home.

Ms. Roberto asserts that the evidence cannot sustain the finding that Mr. Savard "was not threatening or combative" with Ms. Roberto the day before Sarah was born.

At the termination of parental rights hearing, Mr. Savard testified that

> [t]he gun was down at my side, finger straight and off the trigger, and I said "Does it look like I'm serious now?" And when I realized that I was holding the gun, I broke out into tears, and I had set the firearm on the dresser that was right next to the front door, and I had laid down on the

couch crying my eyes out, and Joe [Roberto], he had came in, took the gun, and said "If you would pointed that at us, I would have shot you and killed you."

Mr. Savard testified that he was contemplating suicide and never pointed the gun at Ms. Roberto.

¶ 16    In contrast, Joe Roberto testified that, "[Mr. Savard] had followed her outside holding a handgun [up], yelling to her, 'Do you think I'm serious now,' or 'Does it look like I'm serious?'" Joe Roberto testified that after talking to Mr. Savard, he put the handgun down, went inside the house, and laid face down on the couch." Ms. Roberto did not testify about this incident.

¶ 17    Additionally, the DVPO Ms. Roberto received against Mr. Savard stated that in April 2014, Mr. Savard "loaded [a] handgun [and] cocked it and said 'Do I look serious now?'" Finally, progress notes from Mr. Savard's mental health treatment state that on 23 April 2014, in response to an argument with Ms. Roberto, Mr. Savard "pulled out a gun."

¶ 18    Ms. Roberto asks us to reweigh this evidence and conclude that Mr. Savard was threatening or combative during the incident in question. However, it is not this Court's role to assess the evidence and, where there is conflicting evidence, assign weight or credibility to the evidence; that role is reserved for the finder of fact, in this case the trial court. *See In re L.H.*, 378 N.C. at 636, 2021-NCSC-110, ¶ 16.

¶ 19        Our review of the record reveals that the trial court assigned more weight to Mr. Savard's account of the incident at the root of finding of fact 12. Mr. Savard's account of the incident reveals that, even though he was holding a firearm, his finger was not on the trigger of the firearm, the firearm remained at his side and was not pointed at anyone, and his statement, "Does it look like I am serious now?" pertained to Mr. Savard's threat to take his own life. The trial court clearly took this evidence to show that Mr. Savard was not threatening or combative towards Ms. Roberto. Thus, we conclude that finding of fact 12 is supported by clear, cogent, and convincing evidence.

### 2. *Finding of Fact 13*

¶ 20        Finding of fact 13 states:

> The day after [Sarah] was born, Mr. Savard's mother drove from Illinois to North Carolina to meet [Sarah] and spend time with her. *While Mr. Savard's mother was in North Carolina, Ms. Roberto had a daily routine of taking the newborn [Sarah] to Joe's house and staying all day. Mr. Savard's mother was only able to spend one day with [Sarah] while she was in North Carolina and that was one afternoon. Ms. Roberto has no recollection of this and Mr. Savard's mother's accounts of this week were uncontroverted.*

¶ 21        On appeal, Ms. Roberto acknowledges that Mr. Savard's mother testified that Ms. Roberto went to a friend's house all but one day during the visit. However, Ms. Roberto argues that the trial court erred in finding that Mr. Savard's mother's

accounts of the week were uncontroverted because "both Ms. Roberto and Joe Roberto testified differently." Ms. Roberto's argument fails to recognize that Ms. Roberto testified that she did not remember leaving the home while Mr. Savard's mother was visiting and Joe Roberto only testified that Ms. Roberto did not spend the entire day at his house each day that week. There was no evidence as to Ms. Roberto's actions during the week Mr. Savard's mother visited aside from the testimony of Mr. Savard's mother. Additionally, the testimony cited by Ms. Roberto is far from sufficient to contradict the testimony of Mr. Savard's mother.

¶ 22        Ms. Roberto's arguments on appeal, at best, support striking the final sentence of finding of fact 13. This would leave the substance of the finding unchanged. The substance of finding of fact 13 is supported by Mr. Savard's mother's testimony. Any conclusion otherwise would require this court to reweigh the evidence. Thus, we conclude that finding of fact 13 is supported by clear, cogent, and convincing evidence.

### 3. *Finding of Fact 15*

¶ 23        Finding of fact 15 states:

> Ms. Roberto was granted a permanent one-year domestic violence protective order against Mr. Savard. Ms. Roberto was granted temporary physical and legal custody of [Sarah]. *It was noted in the order that Mr. Savard acted irrationally and aggressively at the hearing.* Mr. Savard was ordered to take a psychological evaluation before requesting mediation for unsupervised visitation. Mr. Savard was allowed supervised visits to be supervised by Ms. Roberto's parents who lived in Sanford, North

Carolina.

Ms. Roberto asserts that the DVPO did not state that Mr. Savard acted irrationally and aggressively at the DVPO hearing. This is true. The DVPO states "[Mr. Savard] appears to the Court to be in need of mental health treatment based on Court's observations of defendant in Court as well as witness descriptions of incidents set out above." However, the words "irrationally and aggressively" do not appear anywhere in the DVPO. Thus, we conclude that the challenged portion of finding of fact 15 is not supported by clear, cogent, and convincing evidence.

### 4. *Finding of Fact 25*

Finding of fact 25 states:

> *Mr. Savard was under the impression that he was no longer required to pay child support as Ms. Roberto never informed him that he as [sic] not make payments directly to her after his child support case was closed.*

Our review of the record does not reveal any testimony or evidence that Mr. Savard believed he was no longer required to pay child support. Mr. Savard testified that he had no problem with child support being taken from his paycheck by the child support agency, Ms. Roberto offered to forgive all child support if he relinquished parental rights, and that he is currently willing and able to provide child support. Ms. Roberto testified that when Mr. Savard texted her to ask her where he was supposed to send child support to, she responded ten days later with her mother's

address. Thus, we conclude that this finding of fact is not supported by clear, cogent, and convincing evidence.

### 5. *Finding of Fact 27*

Finding of fact 27 states:

> In 2017, Mr. Savard hired an attorney to modify the child custody in Onslow county. He hired an attorney. The matter was dismissed. *It is unclear from the record and testimony why it was dismissed; however, it looks like procedural issues.*

Ms. Roberto asserts that contrary to the language of finding of fact 27, it is readily apparent that Mr. Savard's custody action was dismissed because he failed to comply with the trial court's order compelling discovery.

It appears clear to this Court, from the face of the trial court's Order, that Mr. Savard's Motion to Modify Custody and Child Support was dismissed based on Ms. Roberto's Motion to Dismiss for failure to comply with discovery requests, despite Mr. Savard providing the requested information after the time frame designated in the motion to compel expired. Thus, we conclude the challenged portion of finding of fact 27 is not supported by clear, cogent, and convincing evidence.

### 6. *Finding of Fact 29*

Finding of fact 29 states:

> *Throughout 2015 – 2019, Mr. Savard sent Ms. Roberto text messages wishing her happy birthday, asking about [Sarah] and asking to talk. The only time Ms. Roberto*

> *responded was when she asked Mr. Savard about*
> *relinquishing his parental rights.* Ms. Roberto knew how to
> reach out to Mr. Savard *when it benefited her but ignored*
> *him at all other times which also benefited her agenda*
> *which was to terminate his parental rights.*

¶ 31        Ms. Roberto primarily focuses on the trial court's use of the word "agenda,"

arguing that the uncontroverted evidence in the case only established that on at least

three occasions Mr. Savard committed acts of violence towards Ms. Roberto. However,

the trial court, as finder of fact in a termination of parental rights case, cannot rely

solely on uncontroverted evidence. Instead, the trial court must consider all evidence

presented and assign credibility to witnesses in its discretion as it makes findings of

fact.

¶ 32        Here, the evidence presented at the termination of parental rights hearing

shows that Ms. Roberto frequently did not respond to Mr. Savard and primarily

responded when it benefited her (i.e., to ask where to send divorce papers, request

Mr. Savard relinquish his parental rights, etc.). Additionally, the Guardian ad Litem

in the case testified that Ms. Roberto's motive in switching the child support

payments from garnishment from Mr. Savard's paychecks through an agency to

requiring Mr. Savard to pay on his own was because failure to pay child support is a

ground for termination of parental rights. This testimony supports the finding that

Ms. Roberto's "agenda" was to terminate Mr. Savard's parental rights. Thus, we

conclude that this finding of fact is supported by clear, cogent, and convincing

evidence.

### 7. *Finding of Fact 30*

Finding of fact 30 states:

> *Ms. Roberto subsequently blocked Mr. Savard on all social media outlets and blocked his telephone number. Mr. Savard had no way to contact [Sarah] or Ms. Roberto which was reliable.*

At the termination of parental rights hearing Mr. Savard testified that he was blocked by Ms. Roberto on Facebook. The Guardian ad Litem testified that Mr. Savard was blocked by Ms. Roberto on social media and by phone. However, Ms. Roberto testified that she never blocked Mr. Savard's phone. Once again the evidence is conflicting. Even if Ms. Roberto did not block Mr. Savard's phone, we believe the screenshots of the text chain between Mr. Savard and Ms. Roberto, which were entered into evidence, supports the finding that Mr. Savard did not have a reliable method of communicating with Ms. Roberto. Thus, we conclude that this finding is supported by clear, cogent, and convincing evidence.

### 8. *Finding of Fact 36*

Finding of fact 36 states:

> While Mr. Savard has not made valiant efforts to forge a relationship with his daughter, *he has made some efforts which has often times been thwarted by Ms. Roberto. Ms. Roberto has actively hindered and essentially precluded Mr. Savard from being part of [Sarah]'s life. Mr. Savard has not shown an intention to give up all parental rights to*

*[Sarah].*

Ms. Roberto's only argument as to the substance of this finding of fact is that she never "thwarted," "actively hindered," or "precluded" Mr. Savard from being a part of Sarah's life. At the hearing, Mr. Savard testified that when he contacted Ms. Roberto asking how Sarah is Ms. Roberto would not tell him, Ms. Roberto tried to bribe him into relinquishing his parental rights, that he went to a psychologist as required by the DVPO to be able to obtain visitation with Sarah, that he has over 200 pictures of Sarah which he had to get through other friends on Facebook because he was blocked by Ms. Roberto, he bought Sarah about $700 in Christmas gifts that he was not able to give to her, and that he just wants to be a part of Sarah's life because he loves her. This testimony when viewed in conjunction with the Guardian ad Litem's testimony that Ms. Roberto purposefully changed the method of collection of child support to set up a scenario where she could file for termination of parental rights supports the finding that Ms. Roberto thwarted Mr. Savard's efforts to be in Sarah's life. Thus, we conclude that this finding is supported by clear, cogent, and convincing evidence.

In summary, we conclude that the challenged portions of finding of fact 15 and 27 and all of finding of fact 25 are not supported by clear, cogent, and convincing evidence. As a result, we will not consider these unsupported findings in our evaluation of Ms. Roberto's additional arguments. However, the challenged findings

of fact which we concluded are supported by clear, cogent, and convincing evidence and the unchallenged findings of fact are binding on this court in our review of the trial court's conclusions of law. *See In re S.C.L.R.*, 378 N.C. 484, 491, 2021-NCSC-101, ¶ 22.

## B. Grounds for Termination of Parental Rights

¶ 38        In her Petition, Ms. Roberto claimed grounds existed to terminate Mr. Savard's parental rights pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1), (4), and (7). However, following the termination of parental rights hearing, the trial court concluded no grounds existed to terminate Mr. Savard's parental rights.

¶ 39        On appeal, Ms. Roberto argues the trial court erred in concluding that grounds did not exist pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1), (4), and (7). Only one ground is necessary to support a termination of parental rights. *Id.* at 494, 2021-NCSC-101, ¶ 29. Our review of the record makes it clear that the trial court did not err in concluding that Mr. Savard did not neglect Sarah or willfully abandon Sarah. Thus, grounds for termination pursuant to N.C. Gen. Stat. §§ 7B-1111(a)(1) and (7) are not present. Ms. Roberto's most compelling argument is that grounds existed to terminate Mr. Savard's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(4), due to failure to pay child support. Thus, we only analyze this ground for termination of parental rights.

¶ 40        Section 7B-1111(a)(4) provides that the trial court may terminate the parental

rights upon a finding that

> One parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by the decree or custody agreement.

N.C. Gen. Stat. § 7B-1111(a)(4) (2020).

¶ 41　　A review of this State's appellate opinions analyzing N.C. Gen. Stat. § 7B-1111(a)(4) reveals that in order to establish the existence of grounds to terminate parental rights pursuant to § 7B-1111(a)(4), the party petitioning for termination of parental rights need only show (1) that an order or parental agreement requiring the payment of child support was in effect at the time the petition was filed and (2) that the party whose parental rights were sought to be terminated had not paid child support as required by the order or parental agreement within the year preceding the entry of the petition. *In re C.L.H.*, 376 N.C. 614, 620, 2021-NCSC-1, ¶ 13.

¶ 42　　In *In re C.L.H.* , our Supreme Court concluded that the trial court's findings of fact were insufficient to support the termination of respondent's parental rights based on § 7B-1111(a)(4) because the trial court made no findings of fact that a child support order existed in the year prior to the filing of the petition to terminate respondent's parental rights. *Id.* at 621, 2021-NCSC-1, ¶ 13. Similarly, this Court concluded in *In*

*re I.R.L.* that the trial court's findings were insufficient to support a conclusion that a respondent's parental rights were subject to termination pursuant to § 7B-1111(a)(4), despite both parties testifying that a child support order was entered requiring the respondent to pay child support, because the trial court's order was "devoid of any findings indicating that a child support order existed or that [the f]ather failed to pay support as required by the child support order." *In re I.R.L.*, 263 N.C. App. 481, 486, 823 S.E.2d 902, 906 (2019).

The case *sub judice* is similar to *In re C.L.H.* and *In re I.R.L.* in that the trial court's findings of fact do not support a conclusion that grounds for termination of parental rights pursuant N.C. Gen. Stat. § 7B-1111(a)(4) exist, because the findings of fact do not include a finding that an order existed requiring Mr. Savard to pay child support. The findings of fact only include findings that Mr. Savard paid child support and that Mr. Savard's child support payments stopped after Ms. Roberto elected to stop garnishment of child support from Mr. Savard's paychecks through North Carolina Centralized Collections. Thus, based on the findings of fact made, the trial court's conclusion that no grounds existed to terminate Mr. Savard's parental rights was not erroneous.

However, we note that Ms. Roberto did establish that an order was in effect and that order was entered into evidence at the termination of parental rights hearing. Thus, the record includes evidence that would support a finding of fact that

such an order was in effect and a subsequent conclusion that grounds existed to terminate Mr. Savard's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(4).

Nevertheless, it is well settled law that "[t]his Court has consistently held that upon a finding that grounds exist to authorize termination, the trial court is never required to terminate parental rights under any circumstances, but is merely given the discretion to do so." *In re Tyson*, 76 N.C. App. 411, 419, 333 S.E.2d 554, 559 (1985) (citing *In re Pierce*, 67 N.C. App. 257, 312 S.E.2d 900 (1984); *In re Godwin*, 31 N.C. App. 137, 228 S.E.2d 521 (1976)). As a result, we conclude that the trial court acted within its discretion in electing to not terminate Mr. Savard's parental rights and any error the trial court may have made by failing to make a finding of fact regarding the existence of a child support order and subsequently concluding that grounds did not exist to terminate Mr. Savard's parental rights pursuant N.C. Gen. Stat. § 7B-1111(a)(4) was harmless.

## IV.   Conclusion

For the foregoing reasons, we affirm the trial courts order.

AFFIRMED.

Judges CARPENTER and GRIFFIN concur.